## JACOB LEOPARD *vs.* THE CHESAPEAKE AND OHIO CANAL COMPANY.—*December* 1843.

Under the act of 1825, ch. 117, this court is not permitted to affirm or reverse the judgment of the county court upon any point, which is not shown by the record to have been *there* raised and decided.

A prayer to instruct the jury upon the foregoing evidence, that "the plaintiff "is not *in, the face of his said deed*, entitled to recover for any damage "done his mills by reason of the construction of the canal across said pub- "lic road, and the destruction of said public road," involves no question upon the pleadings in the cause—nor whether the facts proved sustain the alle- gations in the declaration: it concedes the sufficiency of the pleadings, and only seeks a decision on the isolated question of the legal effect of the deed referred to, and that thereby the testimony given in the cause showed no cause of action.

The question raised by this prayer bears no resemblance to the inquiries the court is called upon to make, where objection is raised to the admisibility of evidence *offered generally*, in a trial before a jury. In such case the attention of the court is necessarily called to the pleadings, the admisibility of the evidence being entirely dependent on them.

A demurrer is a direct attack on the pleadings themselves, whereon the court must of necessity inspect all the pleadings in the case, as well to enable it to ascertain the sufficiency of the particular pleading demurred to, as in giving its judgment thereon to mount up to the first material error in pleading.

Upon a motion in arrest of judgment the court have no means of judging of the validity of a verdict, but by referring to the pleadings and issues in the cause.

Before the court can grant an instruction that a plaintiff is not entitled to recover, it must assume the truth of all the testimony given to the jury tending to sustain his right to recover, and of all inferences of fact fairly deducible therefrom.

The *Chesapeake and Ohio Canal Company* has no right in cutting its canal across public highways, utterly to destroy them, and it is bound to unite, for the public accommodation, the highway thereby divided, by a reasona- bly convenient thoroughfare over or under its canal.

A deed from a party seized of land, conveying to the *C. and O. Canal Company* "such portion and quantity of his land as may be covered, used or occupied by the said canal, or the necessary works thereof," and describing the pre- mises conveyed, is not a contract to surrender the privilege of using public highways which passed through the granted premises.

In construing a deed made to a canal company for the purposes of its works, the court will presume that the parties to it understood their relative rights, powers, and duties, in respect to the subject matter of their contract.

APPEAL from *Washington* County Court.

This was an action of *trespass upon the case*, commenced on the 18th February 1841, by the appellant against the appellee.

The appellant declared, that whereas the plaintiff on, &c., at, &c., long before, was and from thence hitherto hath been, and still is the proprietor and possessed of a water mill for the grinding of rye, &c., of a saw mill for the sawing of boards, &c., which said mills, until the committing of the grievance by the defendant hereinafter mentioned, were of great value to the plaintiff, and yielded and produced him great annual gains and profits; but for the grievance hereafter mentioned, would still be producing and yielding him great annual gains and profits. And whereas the plaintiff during all the time aforesaid, of right ought to have had, and still of right ought to have the use of a certain road passing through and over a certain close of the plaintiff and unto the said mills, for the plaintiff and his servants and his customers to the said mills to go, return, pass and re-pass, to and from the said mills with horses, &c., at his and their free will and pleasure, when, and as often as they required, for the purpose of carrying grists and saw logs and other timber, and wheat and rye and corn, &c., and other custom to the said mills as aforesaid, to wit, at, &c. Yet the defendants well knowing the premises, whilst the plaintiff was of right entitled to the use of the said road as aforesaid, to wit, on the day and year aforesaid, wrongfully and injuriously cut, dug and made, and caused to be cut, dug and made, a certain canal called the *Chesapeake and Ohio Canal*, of great width and depth, to wit, of the width of sixty feet and of the depth of ten feet, with high and huge embankments, to wit, of the height of ten feet and of the breadth of twenty feet at the base, in and along the whole length of the lands and premises of the said plaintiff, and in and across the said public road, and continued and kept the said canal so cut, excavated and made as aforesaid, from the day and year aforesaid, to the time of the issuing of the writ original in this cause, and the said public road during all that time hath been obstructed, shut up, closed up and rendered impassable for the said plaintiff and his servants, and for his

customers to his said mills, and during all that time the plaintiff and his servants, and the customers having business at his said mills, have been unable to pass and re-pass, to go to and come from the said mills with their horses, carts, wagons and other vehicles, as they of right ought to have done, to wit, at the county aforesaid. By means of which said premises the plaintiff has been deprived of, and has lost during all the time aforesaid, the use, benefit and advantage of his said mills, and has lost and been deprived of all his gains, tolls and profits and custom, which without the said obstructing he would have derived from his said mills, to wit, at the county aforesaid.

And whereas also, heretofore, to wit, on the day and year aforesaid, at the county aforesaid, the plaintiff was and still is seized and possessed of a certain farm, which until the committing of the grievance hereinafter mentioned, was free from all overflowing and injury from being flooded with water, and until the committing of the grievance hereinafter mentioned, was sound, dry and firm land, and produced large quantities of grain, and of grass and hay, to wit, at the county aforesaid, yet the defendant knowing the premises, unlawfully cut, dug and placed a certain canal called the *Chesapeake and Ohio Canal,* along, through and by the said land of the plaintiff, and so negligently, imperfectly and improperly made and constructed the embankments and other works of the said canal, that the water of the said canal has percolated and passed through the said embankments of the said canal and overflowed, submersed, flooded and greatly injured the lands of the plaintiff adjacent to, and lying along the said canal, and the plaintiff from the day and year aforesaid, to the day of the impetration of the writ original in this cause, by reason of the said flooding and inundation, has lost all the use and profits and benefit of the said land, and has been unable to produce either grain or grass on the said land, or to apply the same to any useful or profitable account or purpose, to the damage of the plaintiff of five thousand dollars, and therefore he brings suit, &c.

The appellees pleaded: 1. Not guilty. 2. Not guilty within three years. On these pleas issues were joined.

The plaintiff to support the issue on his part joined in this case, proved by competent testimony, that he was as far back as the year 1820, and still is, seized and possessed in fee of a tract of land or farm, lying and being in the county aforesaid, on which there have been and still are a grist mill and saw mill; that ever since he has so owned said farm and mills, there has been a public county road leading through his said farm, and to and by his said mills, on which road numerous persons residing in the neighborhood and country around, and considerably distant in *Pennsylvania,* have travelled to and from his said mills for the purpose of having their grain ground and made into flour and meal; and also to have their timber sawed into plank and scantling, and that there was no convenient way for the customers of said mills, residing in *Pennsylvania* and *Maryland,* or for the plaintiff himself to have access to the same except on and along said public road; that before the cutting and making of the canal as hereinafter stated, and up to the time of bringing this suit, the plaintiff derived and received as profits from said mills large sums of money; and that the said mills were capable of producing or manufacturing twenty barrels of flour per day; and sawing from 800 to 1000 feet of plank per day, and would produce in that way clear profits for the plaintiff equal in value to the sum of $1,000 per annum. The plaintiff further to support the issue on his part joined, proved by competent testimony, that the defendant made and constructed the *Chesapeake and Ohio Canal* through the said land or farm of the plaintiff and near his said mills, and in constructing the same, dug up, excavated and wholly destroyed so much of said public road as to cut off thereby all communication by said road, with said mills by the customers thereof, as also by the plaintiff himself; and that ever since the said canal has been so constructed, and the said public road so dug up, excavated and wholly destroyed by the defendant, the plaintiff's said mills have not been used by said plaintiff, and have become entirely useless and unproductive to him, and have stood idle, and the customers of the same have been deprived of the use of said road for the purpose of going to and

from them to have their grain ground and their timber sawed into plank and other lumber, as they were accustomed to do before the said road was destroyed by the making of the said canal.

The defendant then to support the issue on his part joined, offered in evidence the following deed from the plaintiff and his wife to the defendant:

"This indenture, made this 24th July 1835, between *Jacob Leopard* and *Delia Leopard* his wife, of, &c., of the one part, and "the *Chesapeake and Ohio Canal Company*" of the other part: whereas the said canal is intended to pass through the lands of the said J. L., who have contracted and agreed to sell to the said company, such portion and quantity thereof as may be covered, used or occupied, by the said canal, or the necessary works thereof, in perpetuity, for which purpose the said J. L. and D. L. his wife, are willing to execute these presents. Now, therefore, this indenture witnesseth, that the said J. L. and D. L., for and in consideration of the premises, and also in consideration of the sum of $1,075, to them in hand paid by the president and directors of the said company, &c., have granted, &c., unto the said C. and O. C., and unto their successors in perpetuity, all the following described pieces or parcels of land, lying in *Washington* county aforesaid, beginning, &c., thence describing thirty courses, containing 19 acres, 2 roods and 35 perches. Together with all that other piece of land lying adjacent to that above described, and between it and the *river Potomac*. Beginning, &c., containing, &c., with all privileges, &c., appurtenant. To have and to hold the said lands and premises unto the said C. and O. C. C. and their successors in perpetuity, to the only proper use, benefit and behoof of the said C. and O. C. C. and their successors in perpetuity, and to and for no other intent, use or purpose."

It was admitted that the land on which said public road was and run, is a part of the land conveyed by said deed to the defendant, and that that part of said road that was destroyed by the said defendant ran over the same. It was further admitted that the land so conveyed, is the very land upon which

the said canal has been constructed, and that the said canal has been constructed in all respects in accordance with the charter.

The defendant, thereupon moved the court to instruct the jury that upon the foregoing evidence, the plaintiff is not, in the face of his said deed, entitled to recover for any damage done his mills by reason of the construction of the canal across said public road, and the destruction of said public road; which instruction the court accordingly gave. The plaintiff excepted.

The verdict and judgment being for the defendant, the plaintiff prosecuted this appeal.

The cause was argued before STEPHEN, ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By PRICE and F. A. SCHLEY for the appellants, and
By J. T. MASON and TIDBALL for the appellees.

DORSEY, J., delivered the opinion of this court.

The bill of exceptions, on which the present appeal is founded, presented for decision in the court below no question upon the pleadings in the cause. Whether the declaration states facts sufficient, if proved, to enable the appellant to maintain his action, or whether the facts proved sustain the allegations in the declaration? are questions which, in the case before us, under the act of 1825, ch. 117, we are not called on to decide. We are not permitted to affirm or reverse the judgment of the county court, upon any point which is not shown, by the record, to have been there raised and decided. The matter brought up for review in this court is the granting, by the court below, of the appellee's prayer for an instruction to the jury, that upon the evidence given in the cause, "the plaintiff (the appellant,) is not, in the face of his said deed, entitled to recover for any damage done his mills, by reason of the construction of the canal across said public road, and the destruction of said public road." The prayer as made to the court, for the purpose of obtaining its determination thereof, since the act of 1825, concedes by implication the sufficiency of the pleadings in the cause; and so far from inviting the court to the examination

thereof, or raising any question thereon for its decision, it in effect withdraws them from its consideration, and invokes it to decide the isolated question whether such were not the legal effect and operation of the deed referred to, that, thereby the testimony given in the cause showed no cause of action in the appellant. The question raised by the prayer made to the court below bears no resemblance to the inquiries which the court are called on to make where an objection is raised to the admissibility of evidence offered, generally, in a trial before the jury. There the attention of the court is necessarily called to the pleadings in the cause; the admissibility of the evidence being entirely dependent on them. The court cannot judge of its pertinence or materiality but by their inspection. Nor is it like the case of a demurrer, which is a direct attack upon the pleadings themselves, wherein the court must of necessity inspect all the pleadings in the case, as well to enable it to ascertain the sufficiency of the particular pleading demurred to, as in giving its judgment thereon to mount up to the first material error in pleading. Nor does it resemble a motion in arrest of judgment, where the court have no means of judging of the validity of a verdict, but by referring to the pleadings and issues in the cause, upon which it wholly depends, and without which it has no operation, and is incapable of forming the basis of a final judgment in the cause.

The leading motive of the legislature in passing the act of 1825, was to remedy an evil which had been severely felt and was loudly complained of, that in this court the judgments of the county court were reversed upon points never raised or decided below, and which, had they been there raised, would at once, by amendment or otherwise, have been obviated and never been presented for the consideration of the appellate court. Such is the nature of the objection now taken in this court, and such would have been its fate if raised in the county court. It is that the plaintiff below could not recover, because his cause of action has been defectively stated in his declaration, though fully established by proof. Whether this defect exist or not, we have deemed it unnecessary to inquire; be-

cause the defect, if true, is excluded from the consideration of this court by the express words and legislative intent of the act of 1825. A different decision would, in a great degree, virtually operate as a repeal of the act of 1825.

Before the county court could grant the instruction prayed for, it must assume the truth of all the testimony given to the jury, tending to sustain the plaintiff's right to recover, and of all inferences of fact fairly deducible therefrom. And must also determine, that so far as the rights of the appellant are concerned, the appellee had authority, for ever, to destroy that part of the public highway crossed by the canal. Assuming the non-existence of this right, whatever may be the imperfections of the declaration in the cause, we are clearly of opinion, that the testimony before the jury, if believed by them, was abundantly sufficient to entitle the appellant to a verdict. See the cases of *Chichester vs. Lethbridge, Willes' Rep.* 71. *Rose and others vs. Miles,* 4 *M. & S.* 101. *Hughes vs. Heiser,* 1 *Binney,* 463. *Greasly vs. Codling and another,* 2 *Bingham,* 263. *Wilkes vs. Hungerford Market Company,* 2 *Bingham's New Ca.* 281; and *Stetson vs. Faxon,* 19 *Pick. Rep.* 147.

The authority of the *Chesapeake and Ohio Canal Company* to destroy this public highway, and to perpetuate its destruction, has in the argument been claimed to exist under two distinct grants; the one emanating from the sovereign power of the State, through which the canal passes; the other from the appellant himself. Under the first, the charter of the *Chesapeake and Ohio Canal Company,* it is, in effect, asserted in the argument, that it has the power conferred on it, of occupying as its site, and of destroying by crossing, and perpetuating the destruction of every public highway between the *City of Washington* and the *Ohio River.* Such a proposition we think is not warranted by any act of legislation before us, and nothing but a grant of such a power in terms the most full and unequivocal, would induce this court to believe that the legislatures referred to, designed to confer it. Such terms are not to be found in the charter of the canal company, and we do not deem it necessary to use arguments or illustrations to show the non-existence of such a power.

Assuming then that the *Chesapeake and Ohio Canal Company* has no right, in cutting its canal across public highways, utterly to destroy them, and that it is bound to unite, for the public accommodation, the highway thereby divided, by a reasonably convenient thoroughfare over or under its canal; has the appellant by the deed of conveyance he has executed to the company, precluded or estopped himself from claiming a right to use the highway thus illegally destroyed by the canal company? That a public prosecution for a nuisance might be sustained for this destruction of the highway, is we think quite clear, and that all persons, other than the appellant, who, by reason of this obstruction or destruction of the highway, have sustained any special or particular injury or damage, may maintain an action on the case against the canal company, appears to us, a proposition equally manifest. Is there, in the deed referred to, any stipulation or covenant, or any thing from which it can be implied, that the appellant contracted to surrender or disrobe himself of this privilege of using the public highway? a privilege possessed by every other citizen of the State. If there be, we have not discovered it. In construing this deed we must presume, in the absence of all proof to the contrary, (if indeed we could look to such proof, were it before us,) that the parties to it understood their relative rights, powers and duties, in respect to the subject matter of their contract. The parties then knowing that the canal company were bound to re-construct and keep open the highway for the benefit of the public, could the appellant suppose, that in executing the deed before us, he surrendered for ever a highly valuable privilege, of which every other member of the community was left in the free and uninterrupted enjoyment. What motive could he have had in making, or the canal company in exacting, such a surrender? The record discloses nothing from which we can be induced to believe that it was the intention of the parties to the deed, that such a sacrifice should have been made. And if in construing the deed we could look to the proof in the record, we could not be induced to believe that the appellant knowingly assented to it. That an annual

income of one thousand dollars, pertaining to realty, and which might endure forever, would, for the gross sum of $1,075, be surrendered and forever abandoned, cannot in our opinion be predicated of the appellant, under the circumstances of this case. The doctrine of estoppel, so much relied on in the argument, we regard as wholly inapplicable to the case before us. The appellant claims no privilege; asserts no right inconsistent with his grant.

CHAMBERS J. dissented, and delivered the following opinion:

I concur with the majority of the court in the opinion that the canal company was under a legal obligation in a reasonable time to provide a safe and sufficient passage way for the public, in lieu of the public county road which their charter permitted them to dig up and convert into the site of their canal, and that the injury to the plaintiff was of a character, according to the plaintiff's testimony, to entitle him to recover in a proper form of action. Still, in my opinion, the instruction of the court below was properly given, that the plaintiff could not recover for any damage done his mills by reason of the *construction of the canal across said public road*, and the *destruction of said public road*. According to my view, the words, "in the face of his said deed," in no degree affects the case. The deed certainly had the effect to confer a right on the company to open the canal, but the most that it seems to me can be made of the introduction of these terms, is to consider them as intended as a reason why the legal proposition asserted, was true. How far the reason, if it be intended as a reason, which influenced the counsel in moving the instruction, was adopted by the court, there is nothing in their language to disclose, but it is not with the reasons, real or imputed, that we have to deal. The proposition of law expressed by the court is, that the plaintiff could not recover. Recover where, when, how? Was it intended that the facts deposed to, would not, in any future suit, in any court, at any time, form a ground of action? I think not, but that on the contrary, the application must be to that particular action then on trial.

If to the instruction as asked, had been supplied the words, "in this action," or, "in this form of action," it could not be denied, I presume, that the court must have looked to the declaration to see whether it enabled the plaintiff to recover. Now I have not been able to comprehend the legal distinction between the different expressions in an instruction, "could not recover in this form of action," "could not recover in this action," or "could not recover." It is said the act of 1825, ch. 117, shuts out all questions not shewn by the record to have been decided by the court below. Admitted. But the very question at issue is, "was the point raised in the court below." The true interpretation of that act is the precise matter of debate.

Since the earliest days of judicial history it has been an axiom, that a plaintiff cannot bring a suit for one thing and recover a different thing. The familiar illustration is, you shall not sue for a horse and recover an ox. Did the act of 1825 design to change this fundamental principle? I cannot think its letter or spirit justify us in saying so; yet with due deference, it appears to me such is the plain result of the doctrine which will condemn the opinion of the court below. The principle now proposed to be adopted is, that you must look *alone* to the evidence, entirely disregarding the pleadings, and if the case made by the evidence entitles the plaintiff to recover, the court will not be permitted to give such an instruction as the present.

Now if the action be for injury to a horse, and the proof be of injury to an ox, the plaintiff, looking only to the case made by the proof, *is* entitled to recover, because, according to the principle assumed, he has made out a case by proof for which he could maintain an action, if his pleadings had conformed to the character of his proof. The pleadings however, it is said, are to be totally disregarded, and in effect, the case is to be treated in all respects in this court as if the pleadings were technically suited to the evidence.

It may well be said too, that there is a more general sense in which both may be included within the same descriptive terms.

The horse and the ox as properly belong to the same family of "beasts," as the "public county road" and the "canal," or "bridge," do to the family of "highways."

If suit is brought for a particular species, it is not enough to prove title to another species of the same genus, else we should find no stopping point short of the universal term of "property," or something similar, which should include every thing to which title could be made. But where will be the end of this principle of interpretation in its practical difficulties? The case of ejectment or replevin will best illustrate it. The replevin is instituted for a horse; the proof is that defendant seized and carried away a horse, and also an ox, from the plaintiff's enclosures; the defendant proves title to the horse, but makes no defence in proof as to the ox.

The defendant in a motion reciting the evidence which proves his title to the horse, asks an instruction to the jury, that if they believe this evidence "the plaintiff cannot recover." The court refuse the instruction, and according to the principle assumed, their decision must be affirmed in this court. In such a case what judgment is to be entered? Plaintiff has no title to the article for which his replevin was instituted, but he has proved title to another article, for which, is he entitled to judgment? And may not the same doctrine, when carried out to its inevitable results, be applied to the case of an ejectment for land, in which a recovery may be had for a horse? It does not remove the difficulty to say that objection may be taken below to the admissibility of the testimony. If the testimony was not admitted, the case does not arise, and it is very true, if there is no case, there is no difficulty. But the matter in hand is how to dispose of the difficulty when the case *does* arise. I cannot agree that the act of 1825 was designed to insulate a question to an extent subversive of the most fundamental rule in the history and nature of suits at law. On the contrary, it is my opinion, that an instruction like the present, "that the plaintiff cannot recover," not only authorises, but imperatively demands from the court, a reference to the character and nature of the plaintiff's claim, and that as the plain-

tiff in this case claimed damages *alone,* for cutting and digging the canal in and across the public road, and thereby destroying it, he cannot recover for the failure of the canal company to provide some other proper passage way for the "public county road," which they had the right to dig up and destroy, and consequently, that the court below was not in error.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.