Stockton *vs.* Frey.—1846.

---

Lucius W. Stockton *vs.* Ira Frey.—*December* 1846.

In an action to recover compensation for injuries done to the person of
plaintiff, by the negligence of the driver of a stage, which was thereby
upset, the plaintiff cannot give in evidence, for the purpose of increasing
the damages, that he had a wife and children.

It is the duty of a stage owner, in the transportation of passengers, to have
drivers of competent skill, who should use such skill with diligence, and
the utmost caution and prudence; they must be well acquainted with the
road they are bound to travel, furnished with well broken, safe, and steady
horses; coaches and harness of sufficient strength, and properly made:
the least failure in any one of those particulars, subjects the stage owner
to the imputation of negligence, and makes him responsible for the injury
or damage arising from such failure.

A prayer which enumerates the facts, to comply with which, constitutes the
duty of the defendant, and that upon a failure in any one of the particulars
enumerated, if so found by the jury, then, in point of law, the defendant
did not perform his duty, but was guilty of negligence, and is responsible

for the injury sustained by the plaintiff from such failure, does not raise any question upon the pleadings; it merely asks the court to instruct the jury, that the hypothesis of the prayer is the law of the case, if supported by the evidence.

In granting or refusing any prayer asking an instruction to the jury, that if they believe certain facts, the plaintiff is, or is not, entitled to recover, this court will not assume, that the county court inspected the pleadings in the cause, and adjudged their sufficiency to sustain the prayer.

If either party designs to raise any question upon the pleadings in an action at law, their prayer under the act of 1825, ch 117, should be framed with a direct reference to the pleadings.

Where a prayer may have a tendency to mislead a jury in reference to the evidence in the cause, as where it only incorporates a part of the evidence which constituted the defence, when it should have incorporated the whole, and prays, that notwithstanding the jury should believe the part embodied in the instruction, still the plaintiff is entitled to recover, it is error to grant it.

In an action to recover damages for a personal injury done the plaintiff, by the negligent driving and upsetting of a stage coach, the jury, in estimating his damages, are to consider, what, before the injury complained of, was the health, and physical, and mental ability of the plaintiff to maintain his family, as compared with his condition in those particulars, after and up to the institution of the suit, in consequence of the injury complained of, and how far it is permanent in its results, as well as the physical and mental suffering he has sustained by such injury, and should allow such damages as, in their opinion, will fairly compensate the plaintiff for the loss and injury which they may find he has so sustained.

Where a coach belonged to the *R.* line, which line belonged to the *N. R. Stage Company*, a co-partnership, composed of the firm of *S., F. & Co.*, and of *M* and *B*, and the firm of *S., F. & Co.*, was composed of the *defendant*, and *M*, and others, and that all the drivers and coaches of the line belonged to the *N. R. Company*; that the defendant had no other connexion with the line than as one of the firm of *S. F. & Co.*, and was declared against, as the owner of the line, in an action upon the case, for the negligent driving of one of the coaches by him used and employed, and pleaded not guilty, there is no variance between the pleadings and the proof.

The members of a firm are individually liable in actions of *tort*, for the acts of the firm, their agents and servants, and for such acts may be sued individually.

To entitle the plaintiff to recover against the owner of a stage coach, for injuries sustained by him in his person, the jury must find, that the injury to the plaintiff was occasioned by the negligence of the defendant, his servants or agents.

The fact of the overturning of a coach, is *prima facie* evidence of negligence; yet, if it was an accident against which human care and foresight could

not guard, and was not the result of negligence in any degree, then the plaintiff is not entitled to recover.

The law makes proprietors of stage coaches responsible for carelessness and negligence—want of due care—in the conveyance of passengers; but not, at all events, as in the case of common carriers.

Where a plaintiff, after an injury sustained in his person from the *tort* of the defendant, agrees with the defendant, or his agent, that in satisfaction of such injury, the defendant should pay the expenses incurred by the plaintiff by his detention, in consequence of his injury, and would furnish him with a free conveyance to his point of destination, and the defendant performs his part of the agreement, the plaintiff cannot recover further damages for the *tort.*

In actions for general and unliquidated damages, the payment and acceptance of a sum of money, as a satisfaction, is a good bar.

The party aggrieved, may determine the sufficiency or insufficiency of the satisfaction paid and accepted by him.

After a cause had been committed to the jury, and partly argued before them, on both sides, it was discovered, that several interrogatories, propounded by the plaintiff to witnesses, under a foreign commission, had not been filed with the clerk of the county court, before they were propounded, nor copies served on the defendant, nor notice thereof in any way given him; but that they were first filed with the commissioners, at the place of executing the commission, it is too late, under the 20th rule of *Baltimore* county court, to move to strike out the evidence of such witnesses, which had been read to the jury.

Where the court is of opinion, that the plaintiff cannot recover, as where there is an admission of satisfaction of his demand, they will not, upon the reversal of the judgment, upon the appeal of the defendant, award a procedendo.

APPEAL from *Baltimore* county court.

This was an action upon the case, for the negligent driving and upsetting of a stage coach, by which the plaintiff was injured in his person and mind, brought by the appellee against the appellant, as owner of the coach, on the 13th August 1841.

The defendant pleaded *non cul,* on which issue was joined. The verdict was against him.

1ST EXCEPTION. At the trial of this cause, the plaintiff proved, that up to October 1839, he had been an active, enterprising man, of good constitution, health and temperate habits, and being called by business, left home, *Lowell,* in *Massachusetts,* for *Missouri,* that he proceeded as far as *Frederick,* where he took a seat in a line of stages of the defendants for

*Wheeling;* on the evening of the 8th October 1839, the coach in which he was, with other passengers, was furiously driven, the horses hurried on, and raced in opposition to another line of stages on the same rout; that at last, in going over a break in the road, the carriage was thrown so high, that the bolt was drawn out of the forward part of the stage, which, with the wheels and horses, escaped. The main part of the coach turned a complete somerset, was smashed to pieces, and all the passengers left in the road, more or less injured. That the plaintiff was seriously injured, wounded in the head and ear, and badly bruised; that he was detained at a tavern, near the place of his accident, for about eight days, and has since been subject to occasional violent attacks of head ache; that his mind is sometimes affected, his general health feeble, his capacity for business injured, and power of enduring labor, and his business nearly destroyed. One of the horses used in the coach had ran off before. After evidence to the above effect had been offered by a great variety of witnesses in detail, the plaintiff proposed further to prove, that he had a wife and several small children; to the admissibility of which the defendant objected. But the county court, (S. ARCHER, C. J., and PURVIANCE, A. J.,) overruled the objection, and permitted the evidence to go to the jury, when it was given. The defendant excepted.

2ND EXCEPTION. In addition to the previous evidence the defendant then proved, that the coach in which the plaintiff was travelling as a passenger, at the time he was injured, was one of the coaches of the line called *The Reliance Line*, and that said line belonged to a company called *The National Road Stage Company;* a co-partnership, which was composed as members thereof, of the firm of *Stockton Falls & Co.*, and of *Daniel W. Moore*, and *S. R. Barry;* and that said firm of *S. F. & Co.*, was composed, as members thereof, of the said defendant and *Moore N. Falls*, and *Charles W. Krebs;* and that all the agents, drivers, coaches, teams, and property, appertaining to the said line, were the agents, drivers, coaches, teams, and property, of the said co-partnership, called *The N. R. S. Co.*, and that the defendant had no other connection

52    v.4

with said line, or with the agents, drivers, coaches, teams, and property, appertaining thereto, than as being one of the said firm of *S. F. & Co.*

The defendant further proved by *James Cowdy,* that during the year 1839, he was the agent of the said *N. R. S. Co.,* and that he had charge of that part of the road in which the accident occurred; that the place where the accident occurred was on *Tonoloway Hill,* three and a half miles west of *Hancock,* that he, the said witness, was stationed at *H.,* and it was his duty and his practice, to examine every coach as it passed up or down, in order to discover whether any thing was out of place or out of order; and that on the night when this accident occurred, and previous thereto, and before the said coach left *H.,* he carefully examined every part of the said coach, and discovered no defect or imperfection of any kind therein; and that he distinctly remembers to have examined the locking machine, and satisfied himself that in this, as in all other respects, the said coach was in perfect order and condition. The said witness says, that the coach was an excellent one; that it had been frequently over the same road, with the same locking machine thereon. The said witness further stated, that the coach arrived at *H.* about 8 o'clock that evening, on its journey westward, and that when he so examined it at *H.,* previous to its departure westward, he examined it with a candle, and examined it with the greatest care. The defendant further proved, that the driver who drove on the night when the accident occurred, was *Jerome McMullen;* that he was an experienced, sober, skilful and careful driver, and one of the very best drivers he has ever known. The defendant further proved, that the team was a good and safe team. The witness then described the place of the accident, as, &c., and the use of the locking machine affixed to the coach; the defendant further proved that the plaintiff rode over with witness to *Mann's* tavern, and that in a conversation which occurred between plaintiff and witness, at *Mann's* tavern, in reference to this disaster, witness inquired of plaintiff whether the driver was in fault, stating that it was the order of the proprietors to witness, to discharge any driver who had been guilty of the least negligence in any respect, and

that the plaintiff then expressed the hope that the driver would not be discharged, stating, that he was not to blame; that he, the plaintiff, had himself been one time a stage proprietor, and that accidents of this kind would occur, notwithstanding every possible care, and that this was such an unavoidable accident.

The defendant then, further proved by *Jerome McMullen*, that he, the said witness, was the driver of the coach at the time it was overturned, that the coach was carefully examined before he started from *Hancock*, and no defect of any kind was visible, that it was a dark night and he had his lamps lighted. That he drove with particular care, and that in passing over the first breaker on *Tonoloway Hill*, about fifty yards from the top, the locking machine gave way. That the breakage of the locking machine rendered him unable to retard the coach, which pressed on the horses, and soon caused them to run, and they did run with great speed down the hill. That he had never encountered the accident of overturning of a coach, nor had he witnessed one, but, &c. The driver then proceeded to give a particular account of the whole accident. The same witness further testified, that after the accident, he examined the locking machine, and found that the screw that ran through the roller and which connected the rod with the roller, was broken off at the shoulder; that the screw was about three-quarters of an inch in diameter, and the fracture was a new one, and which was the fracture of a solid piece of iron, and there was nothing to indicate any original defect in the iron, and to indicate that there was any flaw in the screw. The said witness described the locking machine as follows, &c.; that the immediate cause of the accident was the sudden shock given to the coach, by the obstruction of the lower breaker in the road, and the subsequent separation of the front part of the carriage and front wheels from the body of the coach, and that but for this he believes he could and would have gone safely over the breaker, and down the hill, without accident; but that, in consequence of the breaking of the locking machine, at the first breaker of the hill, it was not in his power to retard the coach, nor to restrain it by holding back the horses; that it was necessarily pressed on the horses and made

them run. He further said that he cannot account for the breaking of the locking machine, otherwise than as an accident.

The defendant further proved by *Dr. Henry V. Bramwell*, that at the time of this accident he resided in *Hancock*, and practised there as a physician, and that he visited the plaintiff at the time he was injured, &c.; described the wound, &c. The plaintiff also proved by the same witness, that after the plaintiff had been so injured, and when he, the witness, was on a professional visit to the plaintiff, it was stated by the plaintiff, that he had a right to sue for damages for the injury that he had sustained, and that it had been suggested to him to do so; but after some conversation, he stated that he knew that such accidents would unavoidably occur, and that if the defendant's agent would pay all his expenses at *Mann's* tavern, and at *McKinley's* tavern, and the witness' bill for his professional services, and would furnish him a conveyance without further charge to *Wheeling*, whenever he should require to go on, either in the public stage, or in a private conveyance, as he might require, that he would be content and satisfied, and would not sue for damages; that the witness being friendly to the proprietors, and believing that they took all care and pains practicable to guard against accidents, undertook to assure him that all this should be done, and promised to see the agent, *Mr. Cowdy*, and state to him the plaintiff's willingness to settle the matter; and he states, that he accidentally did see *Mr. Cowdy*, and stated to him what the plaintiff had said he was willing to accept, in settlement of the matter, and that *Mr. Cowdy* thereupon, on behalf of the proprietors, assented to these terms; and the witness thereupon, on the occasion of his next visit to the plaintiff, stated to him that *Mr. Cowdy* had agreed to the terms, and would pay the expenses; and provide him a conveyance, free of further charge to *Wheeling*, at any time he desired to go, either in one of the stages of the line, or in a private conveyance, as the plaintiff might prefer; and that the plaintiff on being so informed, expressed himself fully satisfied therewith.    It was admitted, that the plaintiff had originally, on taking his seat, paid for the fare to *Wheeling*.    It was also admitted, that *Mr. Cowdy*,

as agent of the proprietors, paid the bill of *Dr. Bramwell,* and *Mr. McKinley's* bill, and that *Mann's* bill was charged by *Mann* to the company, and paid to him by said company, in the settlement of their account with him, at the end of that year. It was also admitted, that the plaintiff when he determined to go on, was furnished, without further charge therefor, a seat in one of the lines of said company to *Wheeling,* and that he went to *Wheeling* in said line, and that he did not require or request to be furnished with a private conveyance. The defendant also further proved by *James Cowdy,* the witness of that name, hereinbefore mentioned, that said *Dr. B.* stated to him, the said witness, as agent for said company, that the plaintiff would be satisfied and content, if his bills were paid at the taverns and to the said docter, and he were provided with a conveyance, without further charge, to *Wheeling,* whenever he desired to go on; and that he, the witness, on behalf of said company, and as their agent, assented to these terms, and desired said *Dr. Bramwell* to assure the plaintiff, that at any time he wished to go, he should have a conveyance, and if necessary, or if desired, he would send him on in a private conveyance. And that afterwards, in pursuance of his understanding or agreement, he did pay said several bills, and did furnish said plaintiff a seat to *Wheeling,* without further charge, in one of the coaches of said company's line, and that he would, if so requested, have promptly provided a private conveyance for him to *Wheeling;* and he further stated, that all his acts in the premises were approved by the said company, and the defendant, and his payments allowed to him, as credits in his accounts, at the time he ceased to be agent. He further stated, that he so ceased to be an agent for the said company, sometime early in the year 1840.

The plaintiff then gave further proof of the unsteadiness and unfitness of the horses for a passenger coach, and insufficiency of the locking machine of the coach; and both parties gave corroborative proof of the statements of their witnesses, and of their views of the case.

The plaintiff then offered the three following prayers, all and each of which were objected to by the defendant's counsel, viz :

1st. That it was the duty of the defendant, in the transportation of the plaintiff upon the journey mentioned in the evidence, to have had a driver of competent skill, and that such driver should have used such skill with diligence, and with utmost caution and prudence, and was well acquainted with the road he was bound to travel, and was furnished with well broken, safe and steady horses, a coach and harness of sufficient strength, and properly made; and that if the jury find, that there was upon the occasion of the said journey, the least failure in any one of these particulars, that then, in point of law, the defendant did not comply with his said duty, but was guilty of negligence, and is responsible for the injury or damage sustained by the plaintiff from such failure.

2nd. That if the jury find with the plaintiff, under the plaintiff's first prayer, that then the plaintiff is entitled to recover, notwithstanding they may find from the evidence of *Dr. Bramwell* and *Cowdy*, that the plaintiff stated, at the periods mentioned by them, that he thought the upsetting of the stage was accidental, and that the driver was not to blame; and although they find, that he also stated, that he would be satisfied in the manner and upon the terms stated by said witnesses, and that the expenses of the said doctor, and the other expenses mentioned by said witnesses, were settled by the defendant, or his agents."

3rd. That if the jury find, that the plaintiff is entitled to recover under the preceding prayers of plaintiff, that then, in estimating the damages he is entitled to recover, they are to consider what, before the injury complained of, was the health, and physical and mental ability of the plaintiff, to maintain himself and family, as compared with his condition in these particulars, after and up to the institution of this suit, in consequence of the said injury, and how far said injury is permanent in its results, as well as the physical and mental suffering he sustained by such injury, and that they should allow such damages as, in their opinion, will fairly compensate said plaintiff for the loss and injury which they may find he has so sustained, as aforesaid.

The defendant offered the six following prayers:

1st. That if the jury shall find from the evidence in the cause, that the coach in which the plaintiff was travelling as a passenger at the time he was injured, belonged to a partnership, as proprietors thereof, called the *N. R. Stage Company*, and that said company was composed of the firm of *S., F. &amp; Co.*, in its capacity as a partnership, and of *D. W. Moore* and — *Barry;* and that said firm of *S., F. &amp; Co.*, was composed of the defendant, and *M., N. F.,* and *C. W. K.*, as members thereof, but that said defendant was not a member of said *N. R. S. Co.*, in his separate or individual capacity, nor otherwise interested therein, except only as being one of the members, as aforesaid, of said firm, of *S., F. &amp; Co.;* and shall further find, that the said coach belonged to a line of coaches running from *Hagerstown* to *Wheeling*, and that said line, and all the agents, drivers, teams, coaches, servants and property, appertaining to or connected with said line, were the agents, drivers, teams, servants and property of said partnership, called the *N. R. S. Co.*, and were not the agents, drivers, teams, coaches or servants, or property of the defendant, in his separate or natural capacity; and that said defendant had no connection with said agents, drivers, teams, coaches, servants or property, in any respect whatsoever, except only as being one of the members, as aforesaid, of said firm of *S., F. &amp; Co.;* and shall further find, that the plaintiff paid his fare to the agent of said *N. R. S. Co.*, and that the defendant had no personal connection with the receipt of said fare, or with the plaintiff in any manner, and did not even know that he had taken a seat as a passenger in said line, until sometime after the plaintiff had been injured, then the plaintiff is not entitled to recover upon the pleadings and proof in this cause, because there is a variance between the pleadings and proof in this, to wit, that in the pleadings, the plaintiff counts upon a contract with the defendant alone, and the proof is, of a contract with a company, of which the defendant was no otherwise a member, than as being one of a firm which, in the aggregate capacity of its members, as a co-partnership, was a member of said company.

2nd. That if the jury shall find the facts set forth in the preceding prayer, then the plaintiff is not entitled to recover upon the pleadings and proofs in this cause, because there is a variance between the pleadings and proofs in this, to wit, that in the pleadings it is alleged, that the said coach, was the coach of the defendant, and the proof shews, that it belonged to a company of which the defendant was no otherwise a member, than as being one of a firm which, in the aggregate capacity of its members, as a co-partnership, was a member of said company.

3rd. That if the jury shall find from the evidence in the cause, the facts set forth in the first prayer, then the plaintiff is not entitled to recover in this cause, even if the jury shall believe, that the injury to the plaintiff was caused by the overturning of the coach in which he was so travelling, and that such overturning was caused by the negligence, carelessness, unskilfulness or default of the driver of said coach, and not otherwise, because there is a variance between the pleadings and such finding in this, to wit: that in the pleadings, the plaintiff complains of the alleged negligence, carelessness, unskilfulness, and default of the defendant, and his servants and agents, and the finding would be of negligence, carelessness, and default of an agent of said company of which the defendant was no otherwise a member, than as being one of a firm which, in the aggregate capacity of its members, as a co-partnership, was a member of said company.

4th. That to entitle the plaintiff to recover in this case, the jury must find from the evidence in the cause, that the injury to the plaintiff was occasioned by the negligence of the defendant, his servants or agents; and that although the ˜ ;t of the overturning of the coach is *prima facie* evidence of negligence, yet, if the jury shall find from all the evidence in the cause, that the overturning of the coach was an accident against which human care and foresight could not guard, and was not the result of negligence in any degree, then the plaintiff is not entitled to recover in this case.

5th. The defendant, by his counsel, prays the court to instruct the jury, that if they shall find from the evidence in the

case, that after the plaintiff had been injured by the overturning of the coach, as testified by the witnesses in the cause, it was agreed, by and between the plaintiff and the agent of the defendant, that in satisfaction of any injury to the plaintiff, occasioned by the said overturning of the coach, the said defendant should and would pay to the several landlords and the physician, the expenses by said plaintiff, incurred by his detention in consequence of such injury, and should furnish to the said plaintiff a free conveyance to *Wheeling*, whenever he should be in a condition to travel, in the regular line, or by private conveyance, if the plaintiff should require it; and shall further find, that afterwards, and in pursuance of said agreement, the said agent of the defendant did pay all said bills, and did afford to the plaintiff a passage to *Wheeling*, in a coach of the defendant, and at the time, and in accordance with the mode of transportation required by the plaintiff, then the plaintiff, upon the issues joined in this case, is not entitled to recover in this suit.

6th. That if they shall find from the evidence in the cause, that after the plaintiff had been injured by the overturning of the coach, as testified by the witnesses in the cause, it was agreed, by and between the plaintiff and the agent of the defendant, that in satisfaction of any injury to the plaintiff, occasioned by the said overturning of the coach, the said defendant should and would pay to the several landlords and the physician, the expenses by said plaintiff incurred by his detention, in consequence of such injury, and should and would furnish to the said plaintiff a free conveyance to *Wheeling*, whenever he should be in a condition to travel, in the regular line, or by a private conveyance, if the plaintiff should require it; and shall further find, that afterwards, and in pursuance of said agreement, the said agent of the defendant did pay all said bills, and did afford to the plaintiff, without charge, a passage to *Wheeling*, in a coach of the defendant, and at the time, and in accordance with the mode of transportation required by the plaintiff, then the plaintiff, upon the issues joined in this case, is not entitled to recover in this suit.

The court, (ARCHER, C. J., and PURVIANCE, A. J.,) granted all the prayers offered by the plaintiff, and instructed the jury accordingly, and rejected all of the prayers offered by the defendant. The defendant excepted to the granting of the prayers offered by the plaintiff, and to the court's instruction accordingly to the jury; and to the refusal of the court to grant the prayers so offered by the defendant.

3RD EXCEPTION. At the trial of this cause, and after the case had been committed to the jury, and partly argued before the jury by the counsel on both sides, it was discovered, that the several interrogatories propounded to *Timothy Frey* and to —— *French,* on the part of the plaintiff, were not filed with the clerk of this court before the same were propounded, and that no copies thereof were served upon the defendant, or upon his counsel, and that the defendant received no notice thereof in any way; and that the same were filed for the first time at *Lowell,* at the execution of the said commission, and with the said commissioners, and returned by said commissioners to this court. The defendant hereupon, by his counsel, moved the court to strike out the answers of said *Frey* and said *French,* to the said interrogatories, and relied upon the following rule of *Baltimore* county court:—

"RULE XX.—When such issue shall be tendered, and the fifteen days allowed for amendment or demurrer have elapsed, either party may, within ten days thereafter, apply to the clerk for a commission to examine witnesses, and shall, within the same time, serve a copy of the interrogatories upon the adverse party, or his attorney, together with the names of commissioners; and if such adverse party shall not, within ten days from the time of such service, file cross-interrogatories, together with the names of commissioners, on his part, the commission shall issue *ex-parte;* and if such commission shall not be applied for in the manner and within the time above mentioned, although the clerk is hereby authorised to issue commissions on the application of either plaintiff or defendant, or their counsel, in all cases which are at issue, provided the party applying shall serve a copy of the interrogatories upon the adverse party, or his counsel, together with the names of commissioners, at least

ten days before the commission issues, yet no commission so afterwards issued shall operate as a stay of proceedings, or prevent the cause being set down for trial, and tried in the ordinary course, unless the same shall have been issued by leave of the court, for special reasons shewn to them on affidavit.''

But the court refused to strike out the answers, or any part thereof, but determined that the same was proper evidence in the cause to be considered by the jury, upon the ground, that the same, with the other evidence taken under the commission, had been read in evidence to the jury, and were in evidence when the prayers on either side were offered and argued before the court, and decided, and the counsel had, until the objection was so made, argued the cause before the jury upon all the evidence. To which refusal and decision of the court, the defendant excepted.

The defendant appealed to this court.

The cause was argued before DORSEY, SPENCE, MAGRUDER and MARTIN, J.

By WILLIAM SCHLEY and McMAHON for the appellants, and

By MEREDITH and REVERDY JOHNSON for the appellees.

SPENCE, J., delivered the opinion of this court.

This was an action instituted in *Baltimore* county court, by *Ira Frey*, for the recovery of damages against *Lucius W. Stockton*, the owner of a line of stage coaches, for carrying passengers from *Hagerstown* to *Wheeling*. The declaration alleges, that *Mr. Frey* was a passenger in the stage coach on the fifth day of October 1839, when, by the negligence, carelessness, unskilfulness and default of the defendant, his agents, and servants, the stage coach was upset; by reason of which, the plaintiff had his skull bone fractured and broken, and was otherwise greatly cut, bruised and wounded, insomuch that the said plaintiff became very ill, and his life was endangered.

The first question presented for our review in this case, arises on the first exception.

At the trial, the plaintiff offered to prove by a witness, that he, the plaintiff, had a family, consisting of a wife and several small children.   To the admissibility of which evidence, the defendant, by his counsel, objected; but the court overruled the objection, and allowed the evidence to go to the jury, and the defendant excepted.   If, in an action of this character, it be legal to offer evidence of the relations of husband and wife, and father and child, by way of augmenting the damages, it would be difficult to determine, what relations in civil and social life might not be offered for the same purpose.

If the argument be, that the party injured is thereby rendered unable to discharge the obligations which he owes as husband and father, why may not the same argument apply to the relation of debtor and creditor, guardian and ward, and many others?   In all of these relations, there is both a legal and moral obligation, and to sanction such a distinction in this case, would be to establish an uncertain and dangerous doctrine. Instead of meting out to the plaintiff, the measure of damage which he has sustained from the injury, it would be compensating the wife and children for that injury.

*Greenleaf*, in his work on evidence, at page 220, vol. 2, states it to be law, "that injuries to the person or reputation, consist in the pain inflicted, whether bodily or mental, and in the expenses and loss of property which they occasion.   The jury therefore, in the estimation of damages, are to consider not only the direct expenses incurred by the plaintiff, but the loss of his time, his bodily sufferings, and, if the injury was wilful, his mental agony also."   The same author, in the same work, at page 210, uses this expression: "The damage to be recovered, must always be the natural and proximate consequence of the act complained of.   This rule is laid down in regard to special damages, but applies to all damage." We therefore think the court erred in overruling the defendant's objection to this evidence.

In the further trial of this cause, the plaintiff offered three prayers, and the defendant six; the court gave the instructions asked by the plaintiff's three prayers, and refused all of the

defendant's; the defendant excepted, and the judgment of the court on these nine prayers, form the second exception.

The plaintiff's first prayer presented the law of the case correctly to the jury. *Vide* the cases of *Curtis and wife, against Drinkwater*, 22 *Eng. Com. Law Rep.*, 51, and 23 *Eng. Com. Law Rep.*, 331, *Sharp vs. Grey.* This prayer raises no question upon the pleadings in the cause, but asks the court to instruct the jury, that the hypothesis of the prayer, is the law of the case, if supported by the evidence. With a view to conform to the manifest intent of the act of 1825, ch. 117, this court have on more than one occasion determined, that neither appellant nor appellee can here be permitted to urge or insist upon any point or question, which shall not affirmatively appear to have been raised and decided by the court below.

In granting or refusing any prayer asking an *instruction to the jury, that if they believe certain facts, the plaintiff is or is not entitled to recover*, this court will not assume, that the county court inspected the pleadings in the cause, and adjudged their sufficiency to sustain the prayer.

If the party seeking the court's instruction designed to obtain the judgment of the court upon the pleadings in reference to his prayer, he should have framed it accordingly; as for example, that the plaintiff is, or is not, entitled to recover under the pleadings in the cause. Then the court below must have decided, upon the sufficiency of the pleadings to support the prayer, and their decision on the question would have formed a fit subject for review, on an appeal to this court. But where, without any direct reference to the pleadings, a prayer is made for an *instruction to the jury, that if they find certain facts, the plaintiff is entitled to recover*; all that the court decides since the passage of the act of 1825, in granting the prayer, is, that the facts enumerated constitute a good cause of action, wherever it is competent for the plaintiff to recover. Upon the pleadings, as no exceptions are taken to them, the court expresses no opinion, and grants the prayer, as if their sufficiency and accordance with the case made by the prayer, were admitted by the parties.

To give a contrary construction to this act of Assembly, would be to open the door to many of the evils, which it was prominently designed to shut out.   By its passage, the legislative intent was, that all objections to pleadings should be raised and determined in the county courts, where, by amendments, if necessary, such objections might be obviated, and in accordance with these views, was decided in the case of *Leopard vs. The Ches. & Ohio Canal Co.*, 1 *Gill*, 222, where this court, in determining a question similar to that now before us, say :

"Whether the declaration states facts sufficient, if proved, to enable the appellant, the plaintiff below, to maintain his action, or whether the facts proved, sustain the allegations in the declaration, are questions which, in the case before us, under the act of 1825, ch. 117, we are not called on to decide."

The court erred in giving the instruction asked for by the plaintiff's second prayer.   Notwithstanding this prayer did not state all of the terms of the accord; yet inasmuch as there was evidence in the cause to sustain, (if believed by the jury,) all the terms of the agreement or accord, the court, by instructing the jury that the plaintiff was entitled to recover, may have misled them.

There was no error in the instruction given under the plaintiff's third prayer.

The court properly refused to give the instruction, asked by the defendant's first, second, and third prayers.   There was no variance:—the members of a firm are individually liable in actions of tort, for the acts of the firm, their agents and servants, and for such acts may be sued individually.   1 *Chit. Pl.*, 74.

The defendant's fourth prayer should have been granted by the court.

We cannot sanction the conclusion of the plaintiff's counsel, that this prayer is, in principle, identical with the plaintiff's first prayer; it contains a very important qualification, not found in the plaintiff's first prayer, to wit, "That if the jury shall find from all the evidence in the cause, that the overturning of the coach was an accident, against which human care and

foresight could not guard; and was not the result of negligence, in any degree, then the plaintiff is not entitled to recover in this case."

The law makes proprietors of stage coaches responsible for carelessness and negligence, in the conveyance of passengers, but not at all events; as in the case of common carriers. In the case of *Christee vs. Griggs, 2 Camp. Rep.,* 81, which seems to be a leading case on this point, *Sir James Mansfield, C. J.,* says : " There is a difference, between a contract to carry goods, and a contract to carry passengers. For the goods, the carrier was answerable at all events; but he did not warrant the safety of the passengers. His undertaking, as to them, went no further than this, that, as far as human care and foresight could go, he would provide for their safe conveyance. Therefore, if the breaking down of the coach was purely accidental, the plaintiff had no remedy for the misfortune he had encountered."

This doctrine is sanctioned in the case of *Stockton vs. Saltonstall,* 13 *Peters' S. P. C. R.,* 181. So, also, in 2 *Kent's Commentaries,* 466. " The proprietors of a stage coach do not warrant the safety of passengers, in the character of common carriers; and they are not responsible for mere accidents to the persons of the passengers, but only for the want of due care."

The court erred in refusing the defendant's fifth prayer. The agreement set out in this prayer, contained all the legal requisites of an accord, with satisfaction. It was in full satisfaction; it was certain; and it was executed.

" In an action on the case, under the plea of not guilty, the defendant may not only put the plaintiff upon proof of the whole charge contained in the declaration, but may give in evidence any justification or excuse of it, or show a former recovery, release or satisfaction." 1 *Chitty's Pleadings,* 432. 3 *Burr,* 1353.

It was very much pressed in the argument of counsel, upon this prayer, that this agreement was defective, because it was not a full satisfaction for the damage sustained; and many cases were cited, where the agreement contained no considera-

tion, or not a full consideration, in which the courts had held such agreements void; but these are cases either of contract, ascertained damages, or tainted by fraud or unfairness: as in the case of *Thomas against McDaniel*, 14 *Johns. Rep.*, 185. It seems at this day to be settled law, that in actions for general and unliquidated damages, the payment, and acceptance of a sum of money, as a satisfaction, is a good bar. And we are entirely at fault to discover, by what rule, or in what mode, in such actions, the sufficiency or insufficiency of the consideration, is to be determined, if we reject the judgment of the party aggrieved. Shall the court assume the province of the jury, and ascertain the amount of damage inflicted on the plaintiff, to obtain a measure by which they may determine the adequacy of the consideration? Or is it to be presumed, that any tribunal is more competent to determine the point, than the party damnified? We think not.

We think the court erred in refusing the defendant's sixth prayer, for the reasons given in our opinion on the fifth.

The court, in refusing to strike out the answers of *Frey* and *French*, to the interrogatories stated in the third exception, committed no error. The motion came too late, and we concur with the county court in the reasons assigned, for rejecting the defendant's motion.

The judgment is reversed;—and as it is the opinion of this court, that the plaintiff cannot recover upon the evidence in this case, no procedendo is awarded.

JUDGMENT REVERSED.