HARRY L. MINCH *v.* FANNIE T. HILKOWITZ ET AL.
[No. 23, April Term, 1932.]

*Decided June 20th, 1932.*

650

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Walter V. Harrison,* with whom was *Robert France* on the brief, for the appellant.

*J. Royall Tippett* and *Derby A. Lynch,* for the appellee.

DIGGES, J., delivered the opinion of the Court.

This case is a suit by a passenger against the driver of an automobile for damages for injuries occasioned by the alleged negligence of the driver. At the close of the plaintiff's case the defendant offered a prayer instructing a verdict for the defendant on the ground that the plaintiff had offered no evidence legally sufficient to entitle her to recover. This prayer was refused; and the jury rendered a verdict for the plaintiff, upon which judgment was entered. The appeal is from that judgment. The single question is the correctness of the court's ruling on the defendant's prayer.

In passing upon the question thus presented, we are bound to assume the truth of the plaintiff's evidence, together with all inferences favorable to the plaintiff which are legally and logically deducible from the evidence thus produced. The law is fully established in this state that a prayer seeking to take a case from the jury for want of sufficient evidence will not be granted if there is any evidence legally sufficient tending to prove it; that is to say, competent, pertinent and coming from a legal source. *Taxicab Co. v. Emanuel,* 125 Md. 246, 93 A. 807; *Moyer v. Justis,* 112 Md. 220, 76 A. 496; *McElderry v. Flannagan,* 1 H. & G. 308; *Leopard v. Ches. & Ohio Canal Co.,* 1 Gill, 222; *Jones v. Jones,* 45 Md. 154; *Mallette v. British-American Assur. Co.,* 91 Md. 481, 46 A. 1005.

Negligence on the part of the defendant must be the basis of recovery in this case; for if the defendant is not shown to have been negligent, the plaintiff's case must fail. This negligence is defined to be the doing of some act, or the failure to do some act, which under the circumstances an ordinarily prudent and careful man would not do in one case, or would do in the other, and which results in injury to the plaintiff. It is necessary, therefore, in an examination of the evidence offered on behalf of the plaintiff, to find that the defendant was negligent, if the plaintiff is to recover.

The facts are that Minch, the appellant, lives on Mount Royal Terrace in Baltimore City, and on the early morning of January 2nd, 1930, about 1 o'clock, was driving the appellee (his mother-in-law) and two of her daughters from the appellant's home to the appellee's home, a distance of three or four blocks. It was the custom of the appellee to frequently visit her son-in-law and his wife; and on this occasion, accompanied by her two daughters, they had spent New Year's evening at the appellant's home. There is an alley at the back of the appellant's house leading into Park Avenue, which is a street running approximately north and south and consists of two lanes for north and south bound traffic respectively; each lane being approximately thirty feet in width, and being separated by a grass plot of the same width. Park Avenue terminates on the north at Mount Royal Avenue, which enters from the southeast and continues on in the form of a Y; the arm to the north leads to Cedar Avenue Bridge and lies to the east of Druid Lake; the other arm of the Y continues to the west and is known as Lake Drive. There are two grass plots lying within the intersection, the larger being occupied by shrubbery and a large monument. The other is smaller, and is opposite the end of the grass plot in the bed of Park Avenue, and northward thereof a distance of approximately sixty-four feet. Park Terrace starts from the west side of Park Avenue, running west, so that to some extent it parallels Lake Drive. Between these two parallel streets, that is to say, Lake Drive and Park Terrace, is a large parked area; and the point

where Lake Drive intersects Park Avenue is about sixty-five feet north of the north curb of Park Terrace.

The injury was caused to the appellee by a collision between the appellant's car, in which she was riding, and a car belonging to Ezra B. Whitman and driven at the time by his son, John Glenn Whitman. The original suit was against the appellant and also the two Whitmans. An instructed verdict for the defendant Ezra B. Whitman was rendered, and a judgment obtained against the appellant and John Glenn Whitman, the drivers of the two cars in question.

The testimony of the appellant shows that he backed his car out of the alley at the rear of his home onto the northbound lane of Park Avenue, proceeded north on Park Avenue until he was opposite the intersection of Park Avenue and Park Terrace; then turned to the left, crossing the southbound lane of Park Avenue, with intent to enter Park Terrace and proceed to Whitelock Street, the home of the appellee. After having nearly crossed the south lane of Park Avenue, with the front half of his car (a Dodge sedan) within Park Terrace, and the rear half in the bed of the lane for south-bound traffic on Park Avenue, his car was struck on the right rear fender by the Whitman car, and turned over. When he was halfway across Park Avenue, driving at a speed of about fifteen miles an hour, he noticed another automobile about seventy-five feet from the northwest corner of Park Avenue and Park Terrace, coming from the west down Lake Drive. He continued westerly towards Park Terrace, and when his car reached the spot above testified to, the collision occurred. He did not know whether the car which he saw approaching eastwardly on Lake Drive was going to proceed south on Mount Royal Terrace or turn south on Park Avenue. The car which struck his car was going at a high rate of speed.

The appellee testified that her son-in-law's car, in which she was riding, went north on Park Avenue, and then turned to the left on Park Terrace; that she was sitting on the right-hand side of the rear of the car, and that they had almost gone all the way through to Park Terrace when she

saw the lights of another car in her eyes; and that was all she remembered.

The appellee's daughter Sonia testified that she was sitting on the rear seat of the appellant's car, between her mother and sister, and did not see the automobile that collided with her brother-in-law's car prior to the collision.

Ann, another daughter of the appellee and the fourth occupant of the Minch car, testified that after they left the Minch home they proceeded north on Park Avenue; that Minch slowed up to make a left-hand turn going west into Park Terrace, and was halfway across Park Avenue when she noticed the Whitman car coming east-bound on Lake Drive; that Minch kept on driving, and had gotten three-quarters of the way over when the Whitman car turned from Lake Drive into Park Avenue and struck the rear of the right-hand side of the Minch car, turning it over on its left side; that the front of the Minch car was in Park Terrace, and its rear was "sticking out in Park Avenue" when the impact took place; that she kept her eyes on the Whitman car from the time she first saw it and "noticed it make a turn into Park Avenue"; that she had no idea as to its speed, but thought it was going "very fast."

John Glenn Whitman, the driver of the Whitman car and a codefendant, was called as a witness for the plaintiff, and testified that he was sixteen years old at the time of the accident, was driving his father's Franklin sedan with his father's consent, and coming home from the Cornell Glee Club concert at the Maryland Casualty Auditorium, accompanied by two friends, all being on the front seat; that he came across Cedar Avenue Bridge and approached the scene of the accident around the east side of the lake; that, as he came southward to where the monument is, he slowed up because it obstructed his view to the right, did not change gears, continued on across the intersection at about twenty-five miles per hour to go south on Park Avenue, and as he proceeded across the intersection, and just as he got to Park Terrace: "A car, all I saw was just suddenly a side of a car, some small light, I didn't know what light it was, some small

light loomed up in front of me. It was so close I didn't have a chance to take my foot off the accelerator and put it on the brake, and then I collided with it. I didn't have a chance to turn the wheel either way. It was so close I collided with it. I was so dumbfounded I didn't put my foot on the brake the whole time, and my car coasted about twenty-five or thirty feet from where I hit it." He further testified that he did not see the Minch car until it was four feet in front of him, and at that time his car was going twenty-five miles an hour; that the right front half of his automobile struck the extreme rear of the Minch car; that, if he had swerved a foot or two, there would have been no accident; and that as he was approaching Park Terrace he was accelerating the speed of his car. On cross-examination this witness testified that he was crossing the intersection of Park Terrace when he first saw the Minch machine "right in front of him"; that the only explanation he can give of why, with his bright headlights, he did not see the machine before he did, is either that the Minch car was coming down suddenly from a turn, or that the Minch car did not have any lights on; that he did not know whether the Minch car had made any turn there or not, but that he (the witness) had the right of way coming across that intersection; that it was a clear night, and no traffic coming north on Mount Royal Terrace, or going north on Park Avenue, or coming east on Lake Drive.

The testimony of the occupants of the Minch machine is that the lights on that machine were clear and bright, and, according to Minch's uncontradicted testimony, were still burning after his machine had turned over.

The above is, in substance, almost in detail, the testimony of the plaintiff's witnesses, two of whom, although called by her, being defendants, and shows that the appellant drove north on Park Avenue, then turned west to cross the southbound lane of Park Avenue at fifteen miles an hour, and when about halfway across the south lane of Park Avenue the Whitman car was proceeding east on Lake Drive about seventy-five feet from its intersection with Park Avenue,

which intersection is about sixty-five feet from the north curb of Park Terrace, a street which the defendant intended to and did enter; that he proceeded across Park Avenue, and at the time of the collision only the rear part of his car remained in that street; that in the meantime the Whitman car, traveling rapidly, had entered Park Avenue from Lake Drive and struck the rear of the defendant's car; that there was a clear space, upon which there was no traffic, to the rear of the Minch car of from fifty to sixty feet; and that Whitman could have avoided the accident by swerving to the left only a foot or two.

There is no evidence which shows negligence on the part of the appellant, for at the time he, at a moderate rate of speed, crossed the south lane of Park Avenue, both he and at least one other occupant of his car saw the Whitman car approaching on Lake Drive, a practically parallel street, and going in the opposite direction. Minch's lights were burning, and there was no reason why an ordinarily prudent and cautious man would not have done what Minch did, relying upon the fact that the view of his car by the driver of the oncoming car was unobstructed, and that car had to make a turn to the right after arriving at the intersection of Lake Drive and Park Avenue, and then proceed sixty-five feet before reaching the point of the collision. It is to be remembered that all of this is according to the evidence on behalf of the plaintiff. Assuming, as we must, the truth of Whitman's evidence, we find that he did not come east on Lake Drive but was proceeding south from Cedar Avenue; that he stopped at the monument some hundred or more feet away from the appellant's line in crossing Park Avenue, and must have been approaching, at the time of the collision, the rear of the Minch car, and would not have been in sight of the appellant. Upon the peculiar conformation of the streets and grass plots near the scene of the accident, it is possible that there is no conflict between any of the witnesses; but if we take the version of the occupants of the appellant's car, or of Whitman, there is still no evidence of negligence on the part of the appellant.

It is contended that the Whitman car had the right of way because it was approaching from the right; but it does not follow that a car approaching from that direction has the right of way under all circumstances, and that one failing to yield such right of way is guilty of negligence. *Taxicab Co. v. Ottenritter,* 151 Md. 525, at page 532, 135 A. 587. It seems positive that the appellant's car had entered the intersection formed by the south lane of Park Avenue and Park Terrace at a time when, according to the weight of the testimony, the Whitman car was proceeding west on Lake Drive, and, according to the witness Whitman's testimony, was either obscured from view by the monument, or was near the monument a hundred feet or more from the point of contact.

Giving full force to the rule that a prayer such as now under consideration will not be granted if there is any evidence legally sufficient tending to prove the plaintiff's case, we are unable to find such; and in our opinion the prayer of the defendant for a directed verdict should have been granted. Entertaining this view, the judgment must be reversed, without a new trial.

> *Judgment reversed, without a new trial, with costs to the appellant.*