JOHN B. BROOKE, ADM'R OF ELI S. BALDWIN, *vs.* RICHARD M. WARING.—*December* 1848.

Where the bill of exceptions presents to the county court no question upon the pleadings, none is presented here. In such cases, the questions to be decided arise upon the proof, without reference to the pleadings, which are assumed to be correct.

*B* sold to *W* a slave, and received one hundred dollars on account of the purchase money. The slave was then sick and not delivered, but delivery was promised at a future day, and before it took place, though requested, the slave died. HELD, that *B,* under the circumstances, was entitled to recover the money advanced by him; and that although it may have been after the contract of sale that the defendant promised to refund, yet such promise was not founded upon a *nude pact.*

If the stipulation to deliver at a future day, and in case of failure to refund, formed no part of the original contract, it was still a modification thereof, and as obligatory upon the parties as if originally entered into.

Under the original contract, the failure to deliver the negro, would have bound the vendor to pay whatever amount of damages resulted to the vendee by reason of such failure, and the substitution of a sum certain, as damages by agreement, would not be without consideration.

APPEAL from *Prince George's* county court.

This was an action of *assumpsit,* commenced on the 1st August 1844, by *E. S. Baldwin,* (since deceased,) against the appellee. The issue was joined on the plea of *non assumpsit.* The verdict was for the defendant.

At the trial of this cause, the plaintiff to maintain the issues on his part, offered to prove, that sometime late in the fall of the year 1843, the witness was sent, by the plaintiff's intestate, to the residence of the defendant, to receive a negro girl, which the said defendant had, before that time, contracted to sell to the said plaintiff's intestate, and on which contract the sum of one hundred dollars had been paid; that when he arrived at said defendant's house, the witness was informed by him, that he could not then deliver the negro to the witness, (defendant's agent to receive her,) and the defendant assigned as a reason for such non-delivery, that the negro woman was unwell, and unfit to be delivered to him, but that in ten day's time, she should be left at the house of *Dr. Wyville,* in *Nottingham,* and that witness must come there for her; that witness did go to said *Wyville's* on the day appointed, and the said negro girl was not there, and the said plaintiff's intestate never did receive said negro girl, she having died shortly after said last application for her delivery to him. And the plaintiff further proved to the jury, by another competent witness, that he was present at a conversation between the plaintiff's intestate and the said defendant, which took place at a period of time which elapsed between the two visits of the agent of plaintiff's intestate, for the delivery to him of said negro girl, in which conversation the plaintiff's intestate complained to the defendant, that he had not delivered the said slave to his agent first mentioned in the preceding part of this bill of exceptions, and the defendant informed said plaintiff's intestate, that he need give himself no uneasiness about the said sum of one hundred dollars, that he, the defendant, was good for it, and it should not be *Baldwin's*

loss if the negro girl was not delivered to said plaintiff's intestate; and he further proved, that the said negro girl never was delivered to the said plaintiff's intestate.

The plaintiff prayed the court to instruct the jury :

"That if they should find from the evidence in the cause, that at the time of the contract between the said parties for the sale of the said negro slave, or at any time afterwards, and before the institution of this suit, it was agreed between the said defendant and the plaintiff's intestate, that the sum of one hundred dollars, which had been paid to him, as aforesaid, by the plaintiff's intestate, should be returned or refunded to said plaintiff's intestate, in case the said slave should not be afterwards delivered or put into his possession, and that the said slave was never accordingly delivered to the plaintiff's intestate, that then the plaintiff is entitled to recover; which instruction the court, (MAGRUDER, C. J., and CRAIN, A. J.,) refused to give; to which opinion of the court the plaintiff excepted.

2ND EXCEPTION. On the testimony contained in the aforegoing bill of exceptions, which is referred to and made a part of this bill of exceptions, the defendant prayed the court to instruct the jury, that there was nothing in the said testimony contained, (none other being offered,) from which they could find a verdict for the plaintiff, which instruction the court accordingly gave; to which opinion of the court the plaintiff excepted.

The plaintiff appealed to this court.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN and FRICK, J.

By DIGGES for the appellant, and
By T. F. BOWIE for the appellee.

SPENCE, J., delivered the opinion of this court.

Neither of the bills of exceptions in this case, presented to the county court any question for decision upon the pleadings, and, of course, none is presented here. The only questions for our decision arise upon the proof, without reference to the pleadings under which it was offered.

We assume, then, that the plaintiff's declaration is such, as to entitle him to a judgment on the verdict of the jury on any finding in his favor, to which his proof may have shewn him entitled.

Questions of pleading out of view, and assuming, that the testimony in the cause was legally sufficient to have been left to the jury, to find the facts set out in the prayer of the appellant in his first bill of exceptions, should not the court have instructed the jury, that, if they found the facts to be as stated in either alternative of the prayer, that the plaintiff was entitled to recover? Our opinion is, that they should have so instructed them.

If the jury believed the terms of the original contract for the sale of the negro, were correctly stated in the prayer, we are at a loss to imagine, a sound objection to the appellant's right to recover.

But, it is insisted, that conceding the correctness of the first hypothesis of the appellant's prayer, that it would be clearly wrong to grant it upon the second, for the reason, that such an agreement as that stated in the prayer, if made after the first contract for the sale of the negro, would be a *nudum pactum*, for which no consideration was given or received between the parties. Many authorities have been referred to, but, when applied to this case, they fail to convince us of the truth of the principle which they were adduced to establish. Correctly to interpret this latter agreement, and to decide upon its legal validity, it is necessary, first, to ascertain what the agreement was, and what would be its operation upon the rights and interests of the parties. The language of the prayer assumes, and the proof in the cause shews, that it was made in the lifetime of the negro, and before the delivery of her, was rendered impracticable. What the terms of this agreement were, its statement in the prayer conclusively shews, as follows: "It was agreed between the said defendant and plaintiff's intestate, that the sum of one hundred dollars, which had been paid to him, as aforesaid, by the plaintiff's intestate, should be returned or refunded to said plaintiff's intestate, in case the said slave should not be afterwards delivered or put into his possession."

If this stipulation formed no part of the original contract between the parties, it cannot be doubted, (but for the objection of its being a *nude pact*,) that, by their subsequently entering into it, the stipulation was incorporated into the original contract, was a modification thereof, and became a part of it, and was as obligatory upon the parties thereto, as if originally a part thereof.

But what would have been the condition of the parties under the original contract, in case the appellee had failed to deliver the negro? the appellant would have been entitled to recover, and the appellee bound to pay, whatever amount of damages resulted to the appellant by reason of such failure. It might have been much more, it might have been much less, than one hundred dollars. What would be the finding of a jury in the case, could not be known.

Under such circumstances, the stipulation or modification of their contract is entered into, by which the appellant, in consideration of the appellees agreeing, (upon the happening of the contingency of non-delivery,) to pay him one hundred dollars certain, and relinquish his, the appellee's, right to be discharged upon the payment of a less sum; that he, the appellant, would agree to accept it, and relinquish his right to claim of the appellee a larger sum, to which his damages might in fact amount, we think the principle of *nudum pactum*, can have no application to such a transaction.

Without intimating any opinion as to the sufficiency in point of fact, of the testimony before the jury, we regard the evidence in the cause as authorising the court to submit to the jury the finding of the facts stated in either alternative of the appellant's prayer.

It follows from what we have said, that the county court erred in refusing to grant the appellant's prayer, contained in his first bill of exceptions, and, consequently, that the court erred in granting the appellee's prayer, contained in the appellant's second bill of exceptions.

Judgment reversed on both bills of exceptions, and procedendo awarded.

JUDGMENT REVERSED AND PROCEDENDO AWARDED.