## JAMES RICHARDSON *vs.* ELIAS MILBURN.

At *common law* a party is not bound *to fence* against an adjoining close, but must, at his peril, keep his cattle upon his own close, and if they escape they may be taken wherever found *damage feasant*, or the owner is liable to an action of trespass by the person injured.

In an action of trespass *q. c. f.* for removing a *fence*, the plaintiff cannot recover for damage *done his crop* by cattle *not belonging to the defendant*, in consequence of the *removal of the fence*, without proof that the fence was his, or that the defendant committed a *trespass* in removing it.

Damages for consequential injuries which *per se* do not amount to a trespass, cannot be recovered in an action of *trespass q. c. f.*, unless there has been some act of *trespass*, which has been instrumental in causing such injuries.

A prayer, that the plaintiff "cannot recover *in this action*" consequential damages, authorises the appellate court to look to the *writ*, in connection with the proof, to see what the *form of action* is.

The *writ* is no part of the *pleadings*; the latter commence with the *declaration*.

APPEAL from the Circuit court for Saint Mary's county.

Trespass *quare clausum fregit,* brought by the appellee against the appellant.

The declaration is in the usual form, charging that the defendant broke and entered the plaintiff's close, cut up and destroyed and carried away his timber and fence-rails, and with certain cattle eat up, trod down and consumed the grass there growing, and the feet of said cattle rooted up, subverted and destroyed the soil, and *other wrongs* to the plaintiff then and there did. Plea *non cul.*

*1st Exception.* The plaintiff proved that prior to the removal of the fence hereinafter mentioned, the defendant told the plaintiff that he intended to move said fence and make a thoroughfare through the plaintiff's field to the bay; that the effect of moving said fence was to expose the field of the plaintiff to the depredation of cattle and stock on the commons; that defendant moved away the fence between the plaintiff and himself in May, and that plaintiff had a field in wheat at the time of this removal, and that after the removal of said fence, the cattle, sheep and hogs of some of the persons in the neighborhood, entered the wheat field of the plaintiff through the gap made by the removal of said fence, and injured the crop of the plaintiff to the extent of 75 bushels; that said cattle entered the day after the removal and continued to trespass until harvest. No evidence was given that any of the stock of the defendant entered through the said gap, the witness not knowing whose stock they were, except one colt. Upon this evidence the defendant asked the instruction which is set out in the opinion of this court, which the court below, (CRAIN, J.,) refused to grant, to which refusal the defendant excepted.

*2nd Exception.* This exception was taken by the defendant, to the refusal of the court to grant the same prayer, upon the same evidence, with the exception of the proof of what the defendant told the plaintiff, and of the effect of the removal of the fence.

The verdict and judgment were in favor of the plaintiff for $300 damages, and the defendant appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and BARTOL, J.

*Frank H. Stockett* for the appellant, argued:

1st. That in the absence of proof, that the fence alleged to have been removed by the defendant was the property of the plaintiff, the defendant had the right to remove it.

2nd. That defendant is not responsible for the trespasses of the cattle and stock of strangers. 3 *Bl. Com.,* 211. *Act of 1715, ch.* 31.

3rd. That if responsible for such trespasses as proved in this cause, then the recovery could not be had in this form of action, but in an action *on the case.* 3 *Bl. Com.,* 123. 1 *Chitty's Pl.,* 125, 127, 129. *Saund. Pl. & Ev.,* 853. 3 *Md. Rep.,* 431, *Scott vs. Bay.* 7 *H. & J.,* 68, *Shafer vs. Smith.* 11 *Mod.,* 130, *Keeble vs. Hickeringill.* 2 *Lord Raymond,* 1402, *Reynolds vs. Clarke,* and same case in 1 *Strange.,* 635. 2 *Wm. Bl. Rep.,* 892, *Scott vs. Shepherd.* 2 *Sergt. & Rawle,* 358, *Smith vs. Rutherford.* 2 *Younge & Jervis,* 391, *Powell vs. Salisbury.* 4 *Eng. Law & Eq. Rep.,* 401, *Sharrod vs. London & North-Western Railway Co.* 3 *East.,* 593, *Leame vs. Bray.* 5 *Term. Rep.,* 648, *Day vs. Edwards.* This action is brought to recover purely *consequential* damages, and all the authorities above cited are clear to the point, that *case* and not *trespass quare clausum fregit* is the proper form of action.

The appellee relies upon the case of *Stockton vs. Frey,* 4 *Gill,* 421, to sustain his point, that the *pleadings* in this case cannot be considered by this court, no question having been raised on them below. But it is submitted, that neither the rule there laid down nor the act of 1825, ch. 117, has anything to do with the question now raised in this case. And it is further submitted, that the words of the prayer do raise the question on the pleadings in the action. It distinctly says, that the plaintiff is not entitled to recover *in this action,* damages so committed by the stock. The particular pleadings in the action are one thing, and the *form of the action* is another and a very different thing. The authorities, heretofore cited, show conclusively, that by no pleadings which could have been applied to the action of trespass *quare clausum fregit,* could the damages proved in this case be recovered. It will be recollected, that all the testimony in the case is contained in the bills of exceptions, and this evidence could only sustain an action on the case. And it will be further recollected, that there is no proof whatever, that any *trespass* was committed, or that the *close of the plaintiff* was broken, the fence being, for all that appears, the property of the defendant on his own land. The case of *Scott vs. Bay,* 3 *Md. Rep.,* 431,

is an authority directly in point. The prayer there was, that the "plaintiff could not recover in *this form of action*," and there the court did not hesitate to examine the pleadings, so far as the *form of action* was concerned, in connection with evidence offered, and decided that the pleadings disclosed a case for *trespass q. c. f.*

*Oliver Miller* for the appellee, argued:

1st. That the *prayer* of the appellant makes no reference to the pleadings, other than the broad negation that *trespass q. c. f.* is the proper *form of action* by which to recover the damages proved in this case. The case of *Stockton vs. Frey*, 4 *Gill*, 421, decides, that where a prayer makes no reference to the pleadings, they cannot be looked to for the purpose of finding defects in them. If then *consequential* damages can be recovered in this *form of action,* under any declaration that could be filed in the case, the court was right in rejecting this prayer, no matter *what defects* there may be in the particular *nar*.

2nd. Can *consequential damages* be recovered in an action of *trespass q. c. f. ?* Upon this point there can be no doubt. A father may bring *trespass. q. c. f.* against a party who enters his house and debauches his daughter, and recover for *loss of services as consequential damages.* 5 *H. & J.*, 27, *Mercer vs. Walmsley.* In *Johnson vs. Courts*, 3 *H. & Mc-H.*, 510, consequential damages *sustained in his crop*, by reason of driving away the plaintiff's negroes, were held to be properly recoverable in an action of *trespass q. c. f.*, for entering his close and driving the negroes away whereby his crop was injured. That case is almost identical with this, where the damages resulting from the wrongful act of the defendant in pulling down the plaintiff's fence, was the entry of cattle and the destruction of his crop.

3rd. But again, under the allegation of *alia enormia* in this very *narr*, the plaintiff could recover for such damages. In 1 *Chitty's Pl.*, 367, it is said, "under this allegation of *alia enormia*, damages and matters which naturally arise from the act complained of, may be given in evidence in *aggrava-*

*tion of damages,*" and in *page* 398, among other illustrations of this rule it is said, that "in an action of trespass against a huntsman for riding over lands, he is liable not only for mischief occasioned by himself, but also for a *concourse of people following him.*" Does not the present case come within this principle? The wrongful act complained of here, is a breaking of the *fence* separating the plaintiff's *wheat field* from a *commons* depastured by cattle. The entering of these cattle into this field was the *natural* result of the breaking of the fence; but on this point we are not left to conjecture, for the record shows that it was *proved,* "that the *effect* of moving the fence was, to expose the field of the plaintiff to the *depredation* of cattle and stock on the commons."

Eccleston, J., delivered the opinion of this court.

This is an action of trespass *quare clausum fregit,* instituted in the circuit court for Saint Mary's county, by the present appellee against the appellant, and was tried upon the plea of *non cul.*

Two bills of exceptions were taken, from which it appears the controversy between the parties grows out of the removal of a fence by the defendant, thereby creating a gap, through which cattle and other stock entered the wheat field of the plaintiff, and injured the crop.

After giving the evidence, the first bill of exceptions states as follows: "Upon the aforegoing evidence, the defendant, by his counsel, prayed the court to instruct the jury, that if the jury find, from the aforegoing testimony, that the defendant in this case moved the fence between the fields of the plaintiff and defendant, and, in consequence of such removal, stock entered upon the land and close of the plaintiff, and committed the damages proved in this case, then the plaintiff is not entitled to recover, in this action, damages for such injury so committed by stock, unless the jury find, from the evidence, that the injury was committed by the stock of defendant; and that there is no evidence before them from which the jury can find that any damage was committed by the stock of defendant." Which instruction the court refused to give, and the defendant excepted.

For some of the counties in this State, there are acts of the Legislature regulating partition fences, but finding none for Saint Mary's county, the principles of the common law will apply to the present case.

In *Rust vs. Low, et al.*, 6 *Mass. Rep.*, 94, Chief Justice Parsons says: "At common law, the tenant of a close was not obliged to fence against an adjoining close, unless by force of prescription; but he was, at his peril, to keep his cattle on his own close, and to prevent them from escaping. And if they escaped, they might be taken, on whatever land they were found *damage feasant;* or the owner was liable to an action of trespass by the party injured. And where there was no prescription, but the tenant had made an agreement to fence, yet he could not be compelled to fence, and the party injured by the breach of the agreement had no remedy, but by an action on the agreement."

In *Little vs. Lathrop*, 5 *Greenlf. Rep.*, 359, it was held, that, at common law, a man was not obliged to fence against an adjoining close, unless by force of prescription; that though not bound to fence against an adjoining close, he was bound, at his peril, to keep his cattle on his own close, and prevent them from escaping. That where no prescription existed, and no agreement had been made, the legal obligations of the tenants of adjoining lands to make and maintain partition fences, rested on the statute of the State. It was also held, that every person might maintain trespass against the *owner* of cattle, unless such *owner* could protect himself by the provisions of the statute, or by an agreement, or by prescription.

In *Thayer vs. Arnold and another*, 4 *Metcalf*, 593, the law as stated in *Rust vs. Low*, is recognized as being correct; Judge Dewey saying: "Several decisions in our sister States have been had, sustaining the entire views stated by the court in *Rust vs. Low*." See, also, 3 *Kent's Com.*, *margl. page* 438, *(7th Ed.)*

An action of trespass *quare clausum fregit*, cannot be maintained, unless the defendant has been guilty of an act of trespass upon property in which the plaintiff shows by proof that he has, at least, a possessory right. Now, with regard to re-

44     v. 11.

moving the fence in question, there is no proof giving a description of the fence; none showing whether it stood upon the dividing line between the parties, or whether it was partly on each side of that line, or whether it stood entirely upon the land of the plaintiff, or wholly on that of the defendant; whether it was recently erected, or for a long time had been established and used as a partition fence; by which of the parties it was either erected or kept up before its removal, or whether there was any agreement in relation to the same. The evidence on the subject is, that prior to its removal, the defendant told the plaintiff he, the defendant, intended to move the fence, and make a thoroughfare through the plaintiff's field to the bay; that the effect of the removal would be to expose the field of the plaintiff to the depredations of cattle and stock on the commons; that the defendant moved away the fence between the plaintiff and himself in May; that the plaintiff had a field in wheat at the time of said removal, and after the fence was taken away, the cattle, sheep and hogs of some persons in the neighborhood entered the wheat field of the plaintiff, through the gap made by the removal of the fence, and injured the crop to the extent of 75 bushels. The plaintiff's witness also states that the cattle, &c., entered the day after the removal, and continued to trespass until harvest.

The proof does not show that any stock of the defendant committed a trespass upon the plaintiff's land. On this subject, the bill of exceptions contains the following statement: "No evidence was given that any of the stock of the defendant entered through the said gap, the witness not knowing whose stock they were, except one colt."

In *Stockton vs. Frey*, 4 *Gill*, 421, in accordance with the rule adopted in 1 *Gill*, 227, the late Court of Appeals sanctioned the doctrine, that if a party desires the opinion of the court upon the evidence, in connection with the pleadings, he should frame his prayer accordingly: "as, for example, that the plaintiff is, or is not, entitled to recover under the pleadings." This ruling has been followed in *Brooke vs. Waring*, 7 *Gill*, 5, and in subsequent cases. A prayer, therefore, which only refers to the evidence, raises no question in regard to the

pleadings. Relying upon this doctrine, the appellee's counsel contends, that the defendant's prayer raises no such question; and that looking to the evidence only, the plaintiff is entitled to recover damages for the injury to his crop, by the stock, no matter who was the owner thereof, although such injury should be merely consequential to the removal of the fence. The argument is, that even if the *nar* does not contain a proper averment of consequential damage, still, as the plaintiff would have a right to claim such damage if the *nar* was in proper form, then, inasmuch as the prayer does not look to the pleadings, so far as the prayer is concerned the *nar* must be regarded as making all necessary averments. Moreover, it is insisted that the consequential damage is properly stated in the declaration. But it has not been said, and we do not suppose it can be said, that damages for consequential injuries, which, *per se*, do not amount to a trespass, can be successfully claimed in such a suit as this, unless there has been some act of *trespass*, which has been instrumental in causing the consequential injuries. From the argument, it is evident that the appellee's right to recover for the injury to his wheat crop, is based, by his counsel, upon the removal of the fence. We, however, are of the opinion that the proof in regard to the fence is not sufficient to support an action of trespass *quare clausum fregit*, for removing the same.

The writ is no part of the pleadings. They commence with the declaration. *Booth vs. Hall*, 6 *Md. Rep.*, 1. And should it be conceded that, under the decisions which have been cited, the defendant's prayer will not authorize the court to examine the pleadings, it has never yet been held, that the court may not look to the writ, in connection with the proof, when they are called to decide upon such a prayer as the present. And we are not disposed to extend the doctrine established in *Stockton vs. Frey*, and other like cases, further than it has been carried already.

This writ, being in trespass *quare clausum fregit*, discloses the nature of the suit to such an extent as enables us to see that no form of declaration which could be legitimately used under such a writ, would have entitled the plaintiff to recover

under the proof, either for the removal of the fence, or for the consequential injury by stock, unless some of the stock belonged to the defendant. And, according to our understanding of the evidence, as stated in the bill of exceptions, there is no proof of his being the owner of any portion of the stock. After speaking of damage to the crop, by stock which entered through the gap in the fence, occasioned by the removal of the same, without saying a word in regard to any other entry of stock, it is then expressly said: "No evidence was given that any of the stock of the defendant entered through the said gap." And the sentence then concludes: "The witness not knowing whose stock they were, except one colt." Now, it would seem to be a strange construction of this sentence, to hold, that when the witness says he did not know whose stock they were, except one colt, without saying whose that was, the colt should be considered as belonging to the defendant, notwithstanding it had been most explicitly stated, that "No evidence was given that any of the stock of the defendant entered through the said gap."

We think the defendant's prayer should have been granted; he is, therefore, entitled to a reversal, and this renders it unnecessary to notice the second bill of exceptions.

*Judgment reversed, and procedendo ordered.*