(Decided 5th March, 1875.)

---

The Baltimore Building Association No. 2, of Baltimore City *vs.* Sidney D. Grant and Celia A. Grant.

*Bill of Exception— When it may be signed—Objections to Prayers for want of Evidence— Collateral impeachment of regularity of a Sale—Measure of Damages—Questions on Pleadings not raised on Instructions not referring to them— When Limitations begin to run in cases of Fraud.*

Judgment on verdict was rendered on the 10th of February, 1874, and on the 1st of May, following, the bill of exceptions was signed. It appeared from the record that exception was taken at the trial; and there was no rule of Court, or proof, to show that it was not competent for the Judge to sign the bill on May 1st. On objection that the bill was signed too late, it was HELD :

That the presumption was that the signing was done by consent of parties, or in accordance with the leave of the Court before given, and the bill of exceptions was valid.

Under Rule 4, (29 Md., 2,) objections to instructions on the ground of insufficiency of evidence to support them, will not be considered in the Court of Appeals, unless it appears by the record that such objections were made and decided by the Court below.

On July 7th, 1869, the B. B. Co. gave its note payable six months after date, to the order of J. C. F., who, on August 3rd, 1869, endorsed it to Y. O. W., and executed a mortgage to him to secure it. J. C F. on August 12th, 1869, conveyed the mortgaged property to C. A. G. The note at maturity was protested, and was afterwards endorsed by Y. O W. to A. W., the treasurer of the B. B. Co.; the money paid for it being furnished by said Co. The mortgage was also assigned to A. W. . On the 2nd of June, 1870, A. W. proceeded in equity to enforce the mortgage, and on the 28th, of the same month the property was sold. There was no evidence that C. A. G., during the equity proceedings, was aware that the B. B. Co. had any interest in them. C. A. G. on the 22nd of March, 1873, instituted suit against the B. B. Co. to recover the value of the property. HELD :

1st. That the suit instituted by C. A. G. did not impeach the validity and regularity of the sale; and the failure to interpose in the equity proceedings did not preclude C. A. G. from maintaining the suit against the B. B. Co.

2nd. That an instruction that the plaintiff was "entitled to recover the sum for which the said property was sold, together with such damages as they might deem proper to allow, not exceeding the interest thereon at the rate of six per cent. from the day of sale," did not incorrectly state the measure of damages.

3rd. That the suit of C. A. G., having been instituted within three years from the day of sale, was not barred by limitations, although instituted more than three years after the maturity of the note.

Questions on the pleadings cannot be raised in the appellate Court on instructions, which do not refer to the pleadings.

In cases of fraud limitations do not run except from the time the fraud is discovered.

APPEAL from the Court of Common Pleas.

This suit was instituted by the appellees to recover from the appellant the value of certain real estate sold under proceedings to foreclose a mortgage. The facts of the case are sufficiently stated in the opinion of the Court. The plaintiffs offered three prayers; the first and second were refused; the third was granted. The defendant offered two prayers which the Court (GAREY, J.,) refused. The verdict and judgment being for the plaintiffs, the defendant appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, GRASON, MILLER, ALVEY, and ROBINSON, J.

*James McColgan* and *Wm. M. Merrick,* for the appellant.

The instruction was erroneous for the following reasons: First, there was no evidence offered of any fraud or guilty knowledge on the part of the defendant upon which the hypothesis of the prayer could be submitted to the jury. Second, the plaintiffs below taking the mortgaged premises by deed subsequent to the mortgage, were in legal privity to the proceedings in Equity to sell, and in that cause should have interposed their objections to the sale and the appropriation of the proceeds thereof, and having stood by, cannot now, in a collateral proceeding, impeach the validity and regularity of the sale, as they clearly might have done in the Equity cause, if the hypothesis of their prayer had any foundation in fact. They do not show in proof or *aver* in any part of the case, that they were in point of fact ignorant of the progress of the Chancery proceedings, nor could they be ignorant of them.

Third, this Court will observe that the pleadings in this cause, all profess to sound in contract express or implied, and that tort, conspiracy or deceit is nowhere alleged as a cause of action. The first five counts are the common money counts and the two last, if they have any signification at all, are merely expansions of the fourth, viz: of money paid by the plaintiffs for the defendant at its request.

Nothing can be clearer than that a mortgagee or other party holding property subject to a lien, cannot by making adversary proceedings necessary, and declining to pay the lien, until a judicial enforcement thereof, subject the party primarily liable to the debt, to the costs and expenses of the judicial procedure; nor can he claim from the principal debtor, the price at which his property has been sold under execution. He can only claim to be repaid the amount of the principal and legal interest of the debt for

which his property was bound, in a count for money paid. If these propositions are true, and they seem to be too elementary to require a citation of authority in their support, the instruction granted the plaintiffs was erroneous in prescribing an excessive and illegal measure of recovery.

*O. F. Bump*, for the appellees.

If one is compelled to pay the debt of another, the law implies a promise on the part of him for whom the money is paid, on which an action may be sustained, for in such case it is not voluntary, but a compulsory payment. *Mayor vs. Hughes*, 1 *G. & J.*, 480 ; 2 *Greenl. Ev., sec.* 114 ; *Rushworth vs. Moore*, 36 *N. H.*, 188 ; *Butler vs. Wright*; 20 *Johns.*, 367 ; *Wright vs. Butler*, 6 *Wend.*, 284 ; *Gibbs vs. Bryant*, 1 *Pick.*, 118 ; *Pownal vs. Ferrand*, 6 *B. & C.*, 439 ; *Sanborn vs. Emerson*, 12 *N. H.*, 57.

Interest may be allowed from the time of the payment of the money. *Gibbs vs. Bryant*, 1 *Pick.*, 118.

Assumpsit lies to recover money obtained through the medium of oppression, imposition, extortion or deceit. *McQueen vs. State Bank*, 2 *Ind.*, 413 ; *Penn vs. Flack*, 3 *G. & J.*, 369 ; 2 *Greenl. Ev.*, 120.

The Statute of Limitations runs only from the time of payment. *Barker vs. Cassidy*, 16 *Barb.*, 177.

This is a case of fraud, and the Statute begins to run only from the time of the discovery. *First Mass. Turnpike Co. vs. Field*, 3 *Mass.*, 201.

The judgment was rendered, February 10th, 1874. The bill of exceptions was filed, and dated May 1st, 1874. This is not sufficient. *Walton vs. U. S.*, 9 *Wheat*, 651 ; *Ex parte Bradstreet*, 4 *Pet.*, 102 ; *Phelps vs. Mayer*, 15 *How.*, 160.

BARTOL, C. J., delivered the opinion of the Court.

In this case the judgment was rendered on the verdict of the jury, upon the 10th day of February, 1874. The bill

of exceptions appears to have been signed and sealed on the first day of May, 1874. It has been contended on the part of the appellee, that it was then too late, and that therefore there is no sufficient bill of exceptions before us, and in support of this position we have been referred to *Walton vs. U. States,* 9 *Wheaton,* 651; *Ex parte Brad-street,* 4 *Peters,* 102; and *Phelps vs. Mayer,* 15 *Howard,* 160. In *Walton vs. U. States,* the bill of exceptions stated that the evidence was objected to at the trial, *but did not state that any exception was then taken to the* decision of the Court. The Supreme Court after adverting to this fact, say, "But the more material consideration is, that the bill of exceptions itself appears on the record not to have been taken at all, until after judgment. *It is a settled principle, that no bill of exceptions is valid, which is not for matter excepted to at the trial.*"

The Court then add. "We do not mean to say that it is necessary, (and in point of practice we know it to be otherwise,) that the bill of exceptions should be formally drawn and signed, before the trial is at an end. It will be sufficient, if the exception be taken at the trial, and noted by the Court, with the requisite certainty; and it may, afterwards, during the term, according to the rules of the Court, be reduced to form and signed by the Judge; and so in fact is the general practice. But in all such cases the bill of exceptions is signed *nunc pro tunc;* and it purports on its face to be the same, as if actually reduced to form, and signed pending the trial. And it would be a fatal error, if it were to appear otherwise; for the original authority under which bills of exception are allowed, has always been considered to be restricted to matters of exception, taken pending the trial, and ascertained before the verdict."

In *Ex parte Bradstreet,* which was an application for a *mandamus,* requiring the inferior Court to sign a bill of exceptions, tendered by counsel, Chief Justice MARSHALL,

who delivered the opinion of the Court said : " The Court will observe, that there is something in this proceeding which they cannot, and which they ought not to sanction. A bill of exceptions is handed to the Judge several weeks after the trial of the cause, and he is asked to correct it from memory. The law requires that a bill of exceptions should be tendered at the trial. But the usual practice is to request the Judge to note down in writing the exceptions, and afterwards, during the session of the Court, to hand him the bill of exceptions, and submit it to his correction from his notes. If he is to resort to memory, it should be handed to him immediately, or in a reasonable time after the trial. It would be dangerous to allow a bill of exceptions of matters dependent upon memory, at a distant period, when he may not accurately recollect them. And the Judge ought not to allow it."

"If the party intends to take a bill of exceptions, he should give notice to the Judge at the trial ; and if he does not file it at the trial, he should move the Judge to assign a reasonable time within which he may file it. A practice to sign it after the term must be understood to be a matter of consent between the parties, unless the Judge has made an express order in the term, allowing such a period to prepare it."

In *Phelps vs. Mayer*, which came up on writ of error, for the purpose of reviewing the ruling of the Court below in granting certain instructions and refusing others, it appeared that "*no exception was taken to them while the jury remained at the bar*. The verdict was rendered on the 13th of December, and the next day, the plaintiff came into Court and filed his exception. There was nothing in the certificate from which it could be inferred that the exception was reserved pending the trial and before the jury retired." Objection was made that the exception was too late, and the Court held that the objection was fatal.

Chief Justice TANEY, speaking for the Court said it has been repeatedly decided "that it must appear by the transcript, not only that the instructions were given or refused at the trial, but also that the party who complains of them excepted to them while the jury were at the bar. The Statute of Westminister 2nd, which provides for the proceeding by exception requires, in explicit terms, that this should be done; and if it is not done, the charge of the Court or its refusal to charge as requested, form no part of the record, and cannot be carried before the appellate Court by writ of error. It need not be drawn out in form and signed before the jury retire; but it must be taken in open Court, and must appear by the certificate of the Judge who authenticates it, to have been so taken. Nor is this a mere formal or technical provision. It was introduced and is adhered to for purposes of justice. For if it is brought to the attention of the Court that one of the parties excepts to his opinion, he has an opportunity of reconsidering or explaining it more fully to the jury. And if the exception is to evidence, the opposite party might be able to remove it by further testimony, if apprised of it in time." The learned Chief Justice refers to *Sheppard vs. Wilson*, 6 *How.*, 275, where the same rule is affirmed.

We have quoted at some length the language of those great jurists; because it expresses in a clear and forcible manner the true rule of practice with regard to the taking of bills of exceptions. But in our judgment the decisions cited do not support the objection made to the bill of exceptions in this case. It plainly appears from the certificate that the exception was in fact taken pending the trial, and as soon as the ruling of the Court upon the prayers was announced. This distinguishes the present case from *Walton vs. U. States*, and *Phelps vs. Mayer*. It appears from the certificate that the formal bill of exceptions was signed by the Judge on the 1st of May, 1874,

sometime after the judgment. Now there is nothing to show that it was not then competent for the Judge to sign it; no rule of Court is produced to the contrary; and the presumption is that it was done by consent of parties, or in accordance with the leave of the Court before given allowing time for its preparation. If it had been dated as of the day when the exception was taken and signed *nunc pro tunc*, in accordance with the usual practice, no objection could be made on account of its being actually signed on a subsequent day. In our judgment the omission of the Judge to sign it *nunc pro tunc*, cannot have the effect of making it invalid. The rule as explained in *Phelps vs. Mayer*, rests upon substantial reason, and cannot be invoked in support of a mere technical or formal objection of this kind. We think the bill of exceptions is sufficient; and we shall therefore proceed to the consideration of the questions which it presents, these arise upon the prayers.

The facts of the case are briefly as follows: On the 7th of July, 1869, the appellant executed its note for $500, payable six months after date, to the order of John C. Foster. On the 3rd of August, 1869, Foster endorsed the note, passed it to Young O. Wilson, and executed a mortgage to secure its payment. On the 12th of August, 1869, Foster conveyed the property covered by the mortgage to the appellee Celia A. Grant wife of Sidney D. Grant. The note at its maturity was protested for non-payment. After the note fell due, it was endorsed by the mortgagee to A. Wilson, Jr. and the mortgage was assigned to him. A. Wilson, Jr. was the treasurer of the appellant, and the money paid by him to the mortgagee for the assignment was furnished by the appellant. On the 2nd day of June, 1870, A. Wilson, Jr. instituted proceedings in equity to enforce the payment of the mortgage, and on the 28th day of June, 1870, the property was sold under those proceedings.

568     MARYLAND REPORTS.

Balt. Build. Asso. No..2, of Balt. City *vs.* Grant.

This suit was instituted by the appellees on the 22nd day of March, 1873, to recover the value of the property so taken.

The Court below by granting the appellees' third prayer, instructed the jury substantially that if they should find from the evidence, the facts hereinbefore stated, and should find *"that the defendant furnished the money to pay the holder of the note, for said note, and fraudulently took a transfer thereof to Archibald · Wilson, Jr., and caused the proceedings in Chancery to be instituted;"* "then the plaintiffs are entitled to recover the sum for which the said property was sold, together with such damages as they may deem proper to allow, not exceeding ·the interest thereon at the rate of six per cent from the day of sale."

The appellant's counsel have urged as an objection to this prayer, " that there' was no evidence. offered of any fraud, or guilty knowledge on the part of the defendant." Under Rule 4, (29 *Md.*, 2,) such an objection cannot be considered in this Court; as it does not appear from the record, that any question as to the insufficiency of evidence to support the prayer was made in and decided by the Court below. It has been further argued on the part of the appellant, " that the appellees ought to have interposed, in the equity proceedings, their objections to the sale, and the appropriation of the proceeds thereof, and having stood by, cannot now, in a collateral proceeding impeach the validity and regularity of the sale."

The answer to this argument is that the appellees are not seeking, by this suit, to impeach the validity or regularity of the sale ; but to recover damages for the wrongful act of the appellant in causing their property to be sold under the decree. There is no evidence that the appellees had any knowledge during the progress of the Chancery proceedings that they were instituted by the appellant and carried on in its interest. They were instituted in the name of Archibald Wilson, Jr. to whom the note and

OCTOBER TERM, 1874.    569

Balt. Build. Asso. No. 2, of Balt. City *vs.* Grant.

mortgage had been transferred, and gave her no notice of the fact, that the money paid for the assignment of the mortgage had been furnished by the appellant, or that the appellant had caused the proceedings in equity to be instituted, or was in any manner connected with them.

Under these circumstances the failure of the appellees to interpose in the equity proceedings, cannot preclude them from maintaining the present suit.

The third objection to the prayer, relied on by the appellant, is founded upon the pleadings.

But the prayer makes no reference to the pleadings, nor are they referred to in either of the prayers offered by the defendant. In such case it has been well settled ever since the case of *Leopard vs. The Canal Co.,* 1 *Gill,* 222, no question upon the pleadings can arise in the appellate Court; their sufficiency is admitted; and the prayer being based simply upon the evidence, the question it presents is whether the facts therein stated constitute a good cause of action, without reference to the state of the pleadings.

The ruling in *Leopard vs. The Canal Co.* has been followed in a great number of cases which it is unnecessary to cite. We refer only to *Stockton vs. Frey,* 4 *Gill,* 421; *Brooke vs Waring,* 7 *Gill,* 5; *Dorsey vs. Dashiell,* 1 *Md.,* 207; *Owings vs. Jones,* 9 *Md.,* 108; *Giles vs. Fauntleroy,* 13 *Md.,* 126; *Birney vs. Telegraph Co.,* 18 *Md.,* 341. We refer also to the *Balto. & O. R. R. Co. vs. State, use of Woodward, ante, page* 268, in which this rule of practice is considered and the cases cited.

The only remaining objection to the third prayer, suggested in the appellant's brief, is with respect to the measure of damages; which it is argued ought to be only the amount of the mortgage debt with interest thereon, and not the amount for which the property was sold, as stated in the prayer.

The argument is that a party having acquired property, subject to a mortgage, cannot by declining to pay the

incumbrance, and making adversary proceedings necessary, under which the property is sold, subject the party primarily liable, to the costs of the judicial procedure, nor claim from the principal debtor, the price at which the property has been sold. But can claim to be repaid only the principal of the debt for which the property was bound with legal interest thereon. This proposition is no doubt correct in the abstract, but it has no application to this case. Here the mortgagor was surety only upon the note, the appellant being primarily liable. The hypothesis of the prayer is that the appellant having paid the debt to the mortgagee, fraudulently procured the same to be assigned to its treasurer, and caused proceedings to be instituted in his name to enforce the mortgage against the property; which belonged to the appellee, Mrs. Grant, and which as against the appellant she was entitled to hold free from the incumbrance. And having under cover of the Chancery proceedings deprived her of the property, by causing it to be sold; there can be no question of her right to recover from the appellant the value of the property; and that value having been ascertained by an actual sale, the Court below, committed no error in saying that the measure of damages was the sum for which the property was actually sold, with interest thereon from the day of sale.

The two prayers of the defendant were properly refused.

They set up the defence of limitations, and assert the proposition that the plaintiffs are not entitled to recover, unless the jury find the defendant promised to pay the note within three years before the institution of this suit.

This is not an action upon the promissory note, that was never held by the plaintiffs. The ground of action is the sale of the plaintiffs' property, under color of certain Chancery proceedings, fraudulently instituted by the appellant, in the name of A. Wilson, Jr., to enforce the payment of a debt for which the appellant was primarily liable, and which it had in fact paid. The right of action could not

arise until the sale was consummated on the 28th day of June, 1870, and this suit was instituted within three years thereafter, viz: on the 22nd day of March, 1873.    But it is well settled that in such case limitations do not run except from the time the fraud was discovered.

It is however unnecessary to discuss this question; in any view of the case the Statute of limitations cannot apply.

Finding no error in the ruling of the Court below, upon the prayers the judgment will be affirmed.

*Judgment affirmed.*

(Decided 5th March, 1875.)